1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10    JOHN L. HARRIS III,

11             Plaintiff,                      No. 2:11-cv-2186 GEB KJN PS

12        v.

13    KAMALA HARRIS, Attorney General of
      the State of California, as in her official
14    capacity, et al.,

15             Defendants.                     ORDER
      _____/

16            Currently pending before the undersigned is defendants' Motion to Dismiss the

17    Second Amended Complaint.[1]  (Mot. to Dismiss, Dkt. No. 21-1.)  Plaintiff John L. Harris III

18    ("plaintiff"), proceeding without counsel in this action, timely filed an opposition brief

19    ("Opposition").[2]  (Oppo., Dkt. No. 23.)  Plaintiff also filed a "Motion for Consideration of

20    Additional Material."  (Dkt. No. 22.)  Defendants filed a reply brief ("Reply") in support of their

21    motion to dismiss.  (Reply, Dkt. No. 26.)

22

23            [1]   The defendants in this action are Kamala Harris, Attorney General of the State of
      California in her Official Capacity, and Don Hayashida, Alicia Fowler, John Jang, John Swift, Carrie
24    Saulsberry, Artie Cooper, Kimberly Bell, Brea Noorani, Steve Wiley, and Rey Del Rio, named in
      their individual and official capacities (collectively "defendants").

25
              [2]   This action was referred to the undersigned pursuant to Eastern District Local Rule
26    302(c)(21).  (Dkt. No. 4.)

The court heard these matters on its law and motion calendar on February 2, 2012. (Minutes, Dkt. No. 34.)  Attorney Christine Mersten appeared telephonically on behalf of defendants.  Plaintiff appeared on his own behalf.

The undersigned has considered the briefs, oral arguments, and the appropriate portions of the record in this case and, for the reasons stated below, grants defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 8(a) and 8(d).  Plaintiff's pleading is not a short and plain statement of claims and does not provide defendants sufficient notice of the claims against them.  The undersigned orders plaintiff to file an amended pleading that more clearly alleges plaintiff's claims and otherwise conforms to this order, the requirements of the Federal Rules of Civil Procedure, and the court's Local Rules.[3]  Further, plaintiff's "Motion for Consideration of Additional Material" is construed as a request for judicial notice and is denied.

I.    BACKGROUND

A.    The Pleading Addressed In This Order

Plaintiff filed his original complaint on August 17, 2011.  (Dkt. No. 1.)  The next day, on August 18, 2011, plaintiff filed a First Amended Complaint.  (Dkt. No. 5.)  On August 22, 2011, without seeking leave of court, plaintiff filed a "Second Amended Complaint."  (Dkt. No. 7.)  The undersigned struck that pleading as improperly filed.  (Dkt. No. 9.)  Thereafter, plaintiff filed a motion to amend his pleading, which the undersigned granted.  (Dkt. No. 20.) The undersigned clarified that the "Second Amended Complaint" filed on August 30, 2011, and located at Docket Number 12 on the court's electronic docket, would serve as the operative pleading in this case.  (Id. at 5.)  Defendants' motion to dismiss targets the "Second Amended

---

[3]    While the undersigned grants defendants' motion pursuant to Federal Rule of Civil Procedure 8, the latter part of this order proceeds to analyze the sufficiency of some of plaintiffs' claims for relief.  The latter portion of the order is intended to offer some guidance to plaintiff regarding how he will likely need to better allege his claims, as well as to offer some guidance to defendants regarding issues they will need to address should they further challenge plaintiffs' amended pleading.  Nevertheless, this order grants defendants' motion pursuant to Rule 8(a), not Rule 12(b)(6).

1   Complaint" filed on August 30, 2011, and this order addresses the same.[4]  (Second Am. Compl.,

2   Dkt. No. 12.)

3                   B.      The Allegations In The Second Amended Complaint

4           Although plaintiff's second amended complaint is rather difficult to understand,

5   what follows is the undersigned's attempt to distill factual allegations and claims from it.

6           Plaintiff's Second Amended Complaint (hereinafter the "SAC" or "complaint")

7   describes six claims for relief: (1) "Violation of the Free Speech Clause;" (2) "Conspiracy in

8   Violation of Sections 1983 and 1985;" (3) "Violation of Due Process;" (4) "Violation of

9   California Labor Code § 1102.5;" (5) "Violation of California Government Code § 8547;" and

10  (6) "Negligent Supervision."  Plaintiff seeks damages, injunctive relief, and declaratory relief.[5]

11  (Second Am. Compl. at 3.)

12          Plaintiff alleges that he has been an employee of the California Department of

13  Justice ("California DOJ") since June 2001.  (Id. at 4.)  Plaintiff is an Associate Governmental

14  Program Analyst in the California Department of Justice's Risk Management Unit.  (Id. ¶¶ 11,

15  27.)

16                  1.      *Plaintiff's "Speech" Of February 10, 2010 ("Property Damage Email")*

17          Plaintiff alleges that he made certain "off-duty" comments to co-workers on

18  February 10, 2010, as well as on May 18, 2010.  (Id. ¶ 30.)  The February 10, 2010 "speech" took

19  the form of an email to plaintiff's supervisor, defendant Artie Cooper, regarding another

20  _____

21          [4]   A prior order clarified that given plaintiff's several amended pleadings the Second
    Amended Complaint at Docket Number 12 of the court's electronic docket shall be treated as the
22  operative pleading.  (Dkt. No. 20.)  In their motion to dismiss, defendants clarify that while plaintiff
    may have served them with a "slightly different version" of this pleading, defendants' motion targets
23  the version of the Second Amended Complaint found at Docket Number 12.  (Mot. to Dismiss, at
    2 n.2.)
24
          [5]   Plaintiff alleges that he filed an action with the Equal Employment Opportunity
25  Commission ("EEOC") prior to filing this action.  (See Second Am. Compl. ¶ 193.)  Plaintiff also
    alleges that he filed an action with the Workers' Compensation Appeals Board prior to filing this
26  action.  (See id. ¶¶ 195-96.)

3

1   employee believed to have damaged some property, and plaintiff's own belief that the employee

2   may not have damaged the property.  (Id. ¶ 34.)

3          Plaintiff alleges that another supervisor, defendant John Swift, gave plaintiff a

4   "written reprimand" for sending the email to Artie Cooper, because the email was outside the

5   scope of plaintiff's assigned job task and because it inappropriately challenged management's

6   position in the property damage investigation.  (Id. ¶ 41.)  Plaintiff alleges that John Swift's

7   written reprimand was included in plaintiff's November 2010 performance review.  (Id. ¶ 44.)

8   Plaintiff also alleges that John Swift wrote in plaintiff's November 2010 performance review that

9   plaintiff had "abandoned" his assigned job tasks.  (Id. ¶ 45.)  Finally, plaintiff alleges that John

10  Swift "authorized the service of" his performance review to Worker's Compensation examiners

11  in connection with plaintiff's alleged April 20, 2010 "industrial injury."  (Id. ¶ 47.)

12              2.     *Plaintiff's "Speech" Of May 6, 2010 ("Lobby Incident")*

13         On May 6, 2010, plaintiff allegedly had a conversation in the elevator lobby with

14  defendant Kimberly Bell, witnessed by defendant Brea Noorani.  (Id. ¶ 86.)  Plaintiff alleges that,

15  according to Noorani's account, plaintiff made a "call me" hand sign to Bell and wanted Bell to

16  call him for "personal reasons."  (Id. ¶ 87.)

17         The Lobby Incident allegedly continued when plaintiff and Bell both observed

18  security officers using security wands to scan visitors entering the building.  (Id. ¶ 90.)  Bell

19  questioned the need for such a detailed search, and in response, plaintiff allegedly stated that

20  there was not a "rock in his pocket."  (Id. ¶ 93.)  Bell later allegedly complained that the

21  comment made her "uncomfortable."  (Id. ¶ 95.)

22              3.     *Plaintiff's "Speech" Of May 18, 2010 ("Smoking Conversation")*

23         Plaintiff alleges that on or about May 18, 2010, while on his lunch break and

24  standing on a street corner, plaintiff had a conversation with fellow California Department of

25  Justice employees, including defendant Kimberly Bell.  (Id. ¶ 49.)  The conversation began about

26  cigarettes.  (Id.)  Plaintiff alleges that he "shared" with his co-workers his knowledge about

4

1   smoking's relation to Sigmund Freud's "theory of psychosexual development" and the "oral

2   stage," where "the libido is focused on the mouth." (Id. ¶ 51.)  As described below, plaintiff

3   alleges he was disciplined for this off-duty "speech."

4
5           4.      *Plaintiff's May 25, 2010 Meeting With Swift And Jang (the "Warning Meeting")*

6           On May 25, 2010, plaintiff was allegedly summoned to a meeting with his

7   supervisors, defendants John Jang and John Swift. (Id. ¶ 63.)  Plaintiff alleges Swift and Jang

8   kept the meeting's topic secret in hopes that plaintiff could not prepare for it and in hopes that

9   plaintiff would react "angrily and inappropriately." (Id. ¶ 103.)

10          The Warning Meeting was allegedly to confront plaintiff about defendant Carrie

11  Saulsberry's complaint regarding the May 18, 2010 "smoking" conversation about Freud, the

12  oral stage, oral fixation, and the duration of breast-feeding.[6] (Id. ¶¶ 66, 97.)  The meeting was

13  also allegedly to confront plaintiff regarding plaintiff's so-called "advances" upon co-worker

14  defendant Kimberly Bell. (Id. ¶¶ 67-68.)  During the meeting, John Swift told plaintiff that

15  Kimberly Bell had made complaints about plaintiff's "stalking" her around the workplace and

16  around a Sacramento 24-hour fitness. (Id. ¶ 70.)  Plaintiff denies Bell's allegations of stalking.

17  (Id. ¶¶ 72-74, 79.)[7]

18          Also during the Warning Meeting, defendant John Swift allegedly told plaintiff

19  that he had violated the California DOJ's "Zero Tolerance" policy by conversing with defendant

20  Kimberly Bell in the elevator lobby on May 6, 2010. (Id. ¶ 86.)  Swift allegedly told plaintiff that

21  his use of the "call me" sign had made Bell "uncomfortable." (Id. ¶ 88.)  Swift allegedly told

22

23          [6] Plaintiff alleges that his employer's "frustrations" regarding plaintiff's disability leave may
24  have prompted this warning. (Second Am. Compl. ¶ 100.)  Plaintiff does not otherwise allege a
    disability discrimination/ADA/reasonable accommodation claim.

25          [7] Plaintiff allegedly arranged for his own polygraph test, and was questioned about the
26  Smoking Conversation of May 18, 2010. (Id. ¶¶ 81-83.)  When plaintiff showed defendant Artie
    Cooper the results from the polygraph test, Artie Cooper was allegedly indifferent. (Id. ¶¶ 84-85.)

1  plaintiff that his "rock in my pocket" comment also made Bell "uncomfortable."  (Id. ¶ 95.)

2          During the May 25, 2010 meeting, plaintiff allegedly requested names of

3  witnesses and copies of their written statements, but Swift and Jang allegedly told him that he

4  was not entitled to these materials because he was not being subjected to any "adverse action."

5  (Id. ¶ 98.)  Swift allegedly told plaintiff that the meeting was "to provide a formal notice . . . that

6  the Department disapproves of your behavior, and to let you know what we expect, regarding

7  future conduct and future communication with Kim Bell."  (Id. ¶ 99.)

8          5.    *Plaintiff Receives A Memorandum of Instruction Dated May 28, 2010*

9          Plaintiff alleges he received a "Memorandum of Instruction" dated May 28, 2010,

10  which informed him of the "zero tolerance" policy and confirmed that plaintiff has been warned

11  about using discretion before making comments.  (Id. ¶ 108.)  The Memorandum of Instruction

12  allegedly informed plaintiff that "similar conduct in the future" will result in "adverse action

13  against" plaintiff.  (Id. ¶ 109.)

14          Plaintiff alleges that he "refused to accept" the Memorandum of Instruction from

15  Jang.  (Id. ¶ 150.)  Plaintiff alleges that Hayashida told Jang to "place it on" plaintiff's desk

16  instead.  (Id. ¶ 150.)  Plaintiff alleges that the Memorandum of Instruction constitutes a

17  "violation of free speech, which is likely to chill the expression of the protected speech of public

18  employees on matters of public concern."  (Id. ¶ 109.)

19          Plaintiff alleges that his employer's "zero tolerance" policy lacks safeguards to

20  ensure protection of plaintiff's First and Fourteenth Amendment rights.  (Id. ¶ 102.)  Plaintiff

21  alleges that his employer's "classification scheme" for defining "adverse employment actions"

22  does not "adequately protect employees' property interest[s] in their employment" because it is

23  insufficient to grant "full procedural due process rights" only upon "adverse employment actions

24  which contemplate[] a suspensive of five days or more."  (Id. ¶ 113.)  Plaintiff alleges that his

25  employer purposefully gave him a "warning" rather than a suspension so as to avoid having to

26  comply with "due process" requirements.  (Id. ¶ 114.)

     6.    *Complaints From Female Co-Workers After May 2010*

Plaintiff repeatedly alleges that he works with a number of female employees.  (Id. ¶¶ 112, 115-16.)  Plaintiff also alleges that many employees have "access" to his personnel file and could thus could possibly read the Memorandum of Instruction therein.  (Id. ¶¶ 117-18.)

Plaintiff alleges that, "[d]uring the three months" following his receipt of the Memorandum of Instruction and his meeting with Swift and Jang, female co-workers made "numerous" complaints about plaintiff's "inappropriate behavior."  (Id. ¶ 119.)  Plaintiff alleges that he was never informed about these complaints.  (Id. ¶ 120.)  Plaintiff has since seen the complaints, and believes they reflect a "general anxiety that plaintiff was found guilty of sexual harassment."  (Id. ¶ 122.)

     7.    *Telephonic Performance Appraisal Of November 19, 2010*

Plaintiff alleges that, on November 19, 2010, and "with approval of Defendant Don Hayashida," defendant Swift gave plaintiff an "unplanned, over-the-phone performance appraisal," which included a reassertion of the allegations contained in the Memorandum of Instruction.  (Id. ¶ 157.)  Plaintiff alleges that this interaction was improper because Swift was not plaintiff's "direct supervisor."  (Id.)

     C.    <u>The "Claims For Relief" As Framed In The Second Amended Complaint</u>

     1.    *"Violation Of The Free Speech Clause" (Second Am. Compl. ¶¶ 124-136)*

Plaintiff alleges that his employer's "zero tolerance" and other human resources policies are "vague and overbroad" because they permit "retaliation" against plaintiff for his "protected speech."  (Id. ¶¶ 126-28.)  Plaintiff alleges it is a "continuing harm" to keep warnings in plaintiff's permanent personnel file.  (Id. ¶ 128.)

Plaintiff alleges that the "zero tolerance" policy allowed Swift and Jang to hold a "special tribunal" (id.¶ 132) and "dispense with plaintiff's due process rights."  (Id. ¶ 132.)  Plaintiff alleges that the "zero tolerance" policy was used to "punish" plaintiff's use of free speech, demonstrating "how easily the policy can be used for unlawful and discriminatory

1   purposes." (Id. ¶ 133.)  Plaintiff alleges that the "zero tolerance" policy permits "punishment of

2   speech" based on a "vague, inconsistently defined, 'inappropriate behavior/conduct' test." (Id. ¶

3   135.)

4           2.      *"Conspiracy" In Violation Of 42 U.S.C. §§ 1983, 1985(3), and 18 U.S.C.
                    § 242 (Second Am. Compl. ¶¶ 137-53)*

5

6           Plaintiff alleges that all defendants were "acting under color of state law" at "all

7   times." (Id. ¶ 138.)  Plaintiff alleges that on May 21, 2010 (i.e., after the Smoking Conversation

8   of May 18, 2010), defendants Kimberly Bell, Brea Noorani, Carrie Saulsberry, and Steve Wiley

9   "agreed and were of one mind in alleging that the plaintiff engaged in conduct which violated the

10  California DOJ's zero tolerance and non-discrimination policies and the California Penal Code

11  (stalking)." (Id. ¶ 139.)

12          Plaintiff also alleges that on May 25, 2010 (the date of the Warning Meeting)

13  defendants Don Hayashida, John Jang, and John Swift, all "plan[ned]" to keep the purpose of the

14  Warning Meeting secret from plaintiff in order to "surprise" plaintiff and to "create an

15  atmosphere of hostility with the objective of provoking the plaintiff to react" negatively and

16  "ambush" plaintiff. (Id. ¶¶ 140, 143-44.)  Plaintiff alleges that Swift and Jang had an

17  "agreement" to "change" the account of plaintiff's conduct during the Smoking Conversation, as

18  evidenced by their "failure to act, or provide a meaningful response to plaintiff's concerns." (Id.

19  ¶ 147.)

20          Plaintiff also alleges that Jang and Swift "agreed to depart from" their employer's

21  policy of completing an "Investigation Report form" so their conduct would not be detected by

22  any subsequent "incident investigator." (Id. ¶ 144.)  Plaintiff alleges that further "evidence of a

23  conspiracy agreement" is the fact that defendant consistently failed to "address the issue of

24  plaintiff's rights under the First and Fourteenth Amendment to the Constitution." (Id. ¶ 146.)

25  ////

26  ////

3.      *"Due Process Clause"/ "Violation Of The Fourteenth Amendment"(Second Am. Compl. ¶¶ 154-60)*

Plaintiff alleges that defendants improperly refused to "investigate plaintiff's complaint of a violation of his Constitutional Rights in 2010." (Id. ¶ 155.) Plaintiff alleges he filed a "formal complaint" with his employer's "Equal Employment Equal Rights Office" (the "EER&R") but that the EER&R "refused to take protective action."[8] (Id. ¶ 156.) Plaintiff also alleges that Swift's November 19, 2010 "over-the-phone performance appraisal" amounted to a deprivation of Due Process rights.[9] (Id. ¶¶ 157-58.)

Plaintiff alleges he did not have an adequate "opportunity to be heard" prior to "the implementation of an adverse employment action," because plaintiff's statements were "made outside the administrative process and were made in defiance of . . . Swift's threat of additional adverse employment action if the plaintiff chose to respond." (Id. ¶¶ 158-59.)[10]

4.      *"California Labor Code § 1102.5"(Second Am. Compl. ¶¶ 161-68)*

Plaintiff alleges that he engaged in protected activity by "reporting the unlawful and bad faith conduct of Defendants John Swift and John Jang" to various agencies.[11] (Id. ¶ 163.) Plaintiff alleges that certain agencies are part of the alleged "conspiracy" and that this motivated them not to respond to plaintiffs' report. (Id. ¶ 164.)

---

[8] Plaintiff does not allege the form or content of any "formal complaint" he allegedly made.

[9] Plaintiff does not allege which constitutional rights plaintiff alleges were violated by having an "over the phone" performance appraisal by someone he alleges was not his direct supervisor.

[10] Plaintiff does not allege when or how he was denied an "opportunity to be heard." There is no clear factual allegation that defendant Swift made a "threat" and no indication of the nature of such threat.

[11] These agencies are, allegedly, "the California Attorney General, the California Department of Justice Equal Rights . . . [and] the California Department of Justice Division of Administrative Services." (Compl. ¶ 163.) However, plaintiff does not allege how or when he completed such "reporting" to these agencies, nor does he allege the content of such reports. Plaintiff does not allege facts supporting his suggestion that these agencies are part of a "conspiracy" to deny him of constitutional rights.

9

1       5.     *"California Whistleblower Protection Act"/ Cal. Gov. Code § 8547*
            *(Second Am. Compl. ¶¶ 169-74)*

2

3       Plaintiff alleges that, on or about February 10, 2010, plaintiff "reported to his

4 California DOJ supervisor" that he had "material evidence which contradicted a property damage

5 claim . . . allegedly caused by a California DOJ employee." (Id. ¶ 170.) Plaintiff alleges that

6 defendant Swift "retaliated" against him after learning of the Property Damage Email. (Id. ¶

7 172.) Swift's alleged retaliation took the form of a "personally vindictive and humiliating

8 written reprimand in which he described the Plaintiff's message to his supervisor in terms which

9 allege that Plaintiff failed to follow instructions [and] was insubordinate." (Id. ¶ 172.) Swift's

10 alleged retaliation also took the form of a similar "reprimand" in plaintiff's November 2010

11 performance appraisal, and in "supporting documentation for a June 24, 2011 adverse

12 employment action recommending a twenty-day suspension without pay." (Id. ¶ 173.)[12]

13       6.     *"Negligent Supervision" (Second Am. Compl. ¶¶ 175-91)*

14       Plaintiff alleges that defendant Don Hayashida is the direct supervisor for

15 defendant John Swift. (Id. ¶ 177.) Plaintiff alleges that Hayashida did not properly supervise

16 Swift. (Id.) Plaintiff alleges that Swift is "considered Don Hayashida's 'Boy'." (Id. ¶ 180.)

17 Plaintiff alleges that Swift is "the only African-American male in a supervisory position, and the

18 Plaintiff is the only African-American male appointment to an Associate Governmental

19 Programmer Analyst position in over ten years." (Id. ¶ 180.) Plaintiff alleges that in the "ten

20 years" plaintiff has been employed under Hayashida, "African-American males are rarely hired,

21 and never promoted."[13] (Id. ¶ 181.)

22       Plaintiff alleges that Hayashida "used his authority" to "waive" plaintiff's annual

23

24    [12] There are no additional factual allegations regarding a June 24, 2011 recommendation of
suspension. The pleading does not address whether the recommended suspension actually occurred,
nor does it state the given reason for the suspension.

25

26    [13] This is the only race-based allegation in plaintiffs' complaint. There are no additional
supporting allegations for racial discrimination, and no such claim is formally pleaded.

1    performance review and instead to allow Swift to infrequently complete plaintiff's performance

2    appraisal and "rarely" include any positive information about plaintiff, focusing instead on

3    "corrective action" required of plaintiff.  (Id. ¶ 182.)  Plaintiff alleges that Hayashida allowed

4    Swift to complete plaintiff's performance review even though Swift "did not have a firsthand

5    understanding of plaintiff's job performance" and is not plaintiff's direct supervisor.  (Id. ¶ 186.)

6            Plaintiff also alleges that his personnel file demonstrates "increased scrutiny" and

7    "a dramatic increase in negative reporting" about plaintiff following "plaintiff's August 1, 2007

8    and April 30, 2010 workplace injuries, which required several requests for reasonable

9    accommodations."[14]  (Id. ¶ 191.)

10   II.    LEGAL STANDARD

11          A.    Federal Rule of Civil Procedure 8

12          Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a

13   plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims

14   showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

15   (2009); Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053

16   (2010).  Under notice pleading in federal court, the complaint must "give the defendant fair

17   notice of what the claim is and the grounds upon which it rests."  Bell Atlantic v. Twombly, 550

18   U.S. 544, 555 (2007) (internal quotations omitted).  In order to survive dismissal for failure to

19   state a claim, a complaint must contain more than "a formulaic recitation of the elements of a

20   cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the

21   speculative level."  Id.  While Rule 8(a) does not require detailed factual allegations, "it demands

22   more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at

23   1949.  Similarly, Rule 8(d) requires a pleading to be "concise and direct," and made up of

24   "simple, concise and direct" allegations.  Fed. R. Civ. P. 8(d).

25

26          [14] Plaintiff does not allege any facts about his so-called "workplace injuries," nor does he allege any disability discrimination claims.

B.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Federal pleading standards require the presentation of factual allegations sufficient to state a plausible claim for relief as to each defendant.  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998) ("[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of civil rights").  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The mere possibility of misconduct falls short of meeting this plausibility standard.  Twombly, 550 U.S. at 545.  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555) (citations and internal quotations omitted).

A complaint should be dismissed for failure to state a claim if, taking all well-pleaded factual allegations as true, it does not contain "'enough facts to state a claim to relief that is plausible on its face.'"  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Iqbal,129 S. Ct. at 1949.)  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely

12

because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and provide an opportunity to cure those deficiencies if it appears at all possible that the plaintiff can do so.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under Iqbal.).

III.   DISCUSSION

A.   Plaintiff's Pleading Fails To Satisfy The Requirements Of Federal Rule Of Civil Procedure 8

Plaintiff's prolix pleading, which consists of nearly 50 pages of many repetitive, confusing allegations against "all defendants," fails to give each defendant proper notice of the claims against it.  As currently worded, the SAC forces the court and the defendants to wade

1   through conclusory and redundant allegations in efforts to piece together the facts upon which

2   plaintiffs' claims are based.

3         It is difficult for defendants to attack specific claims on their merits if they do not

4   know which claims are being asserted against them.  Here, plaintiff has not directed specific

5   claims at specific defendants, and instead, has simply named a laundry list of defendants,

6   included a laundry list of allegations (many of which are tangential and/or conclusory), and

7   included a list of claims for relief.  Plaintiff's current pleading "is replete with allegations that

8   'the defendants' engaged in certain conduct, making no distinction among the [defendants]

9   charged, though geographic and temporal realities make plain that all of the defendants could not

10  have participated in every act complained of."  See <u>Magluta v. Samples</u>, 256 F.3d 1282, 1284

11  (11th Cir. 2001).

12      1.    *Each Defendant Is Entitled To Fair Notice Of The Claims Against Him Or*

13                 *Her*

14        The SAC's 209 paragraphs of allegations and six claims for relief against 11

15  named defendants, does not satisfy the requirements of Rule 8(a) and (d).  A panel of the Ninth

16  Circuit Court of Appeals summarized the ills of confusing or vague complaints as follows:

17

18        Prolix, confusing complaints such as the ones plaintiffs filed in this case
      impose unfair burdens on litigants and judges.  As a practical matter, the

19        judge and opposing counsel, in order to perform their responsibilities,
      cannot use a complaint such as the one plaintiffs filed, and must prepare

20        outlines to determine who is being sued for what.  Defendants are then put
      at risk that their outline differs from the judge's, that plaintiffs will

21        surprise them with something new at trial which they reasonably did not
      understand to be in the case at all, and that res judicata effects of

22        settlement or judgment will be different from what they reasonably
      expected. . . .

23        The judge wastes half a day in chambers preparing the "short and plain
      statement" which Rule 8 obligated plaintiffs to submit.  He then must

24        manage the litigation without knowing what claims are made against
      whom.  This leads to discovery disputes and lengthy trials, prejudicing

25        litigants in other case who follow the rules, as well as defendants in the
      case in which the prolix pleading is filed.

26

McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (affirming district court's dismissal of the complaint for violation of Rule 8 and failure to comply with court orders); see also Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058-59 (9th Cir. 2011) (addressing dismissals for overly lengthy complaints and stating that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of War and Peace to discern a plaintiff's claims and allegations").  Plaintiff's complaint falls within the class of complaints described by the Ninth Circuit Court of Appeals in McHenry.  The undersigned has spent a great amount of time reviewing and outlining plaintiff's complaint in an effort to make sense of it and is admittedly still confused about many aspects of the complaint.

The six claims within plaintiff's complaint each consist of allegations against "defendants" generally, making it impossible to discern which allegations are targeted against which defendants in this case.  As currently worded, plaintiff's practice of alleging each claim against "defendants" results in a pleading that is prohibitively vague and fails to inform each defendant of the particular claims against him or her.  Plaintiffs' current complaint is impermissibly "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the [defendants] charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."[15]  See Magluta, 256 F.3d at 1284; Barren, 152 F.3d at 1194 (federal pleading standards require the

---

[15]   The complaint in Magluta is analogous to plaintiffs' complaint in this action. "The complaint is a quintessential 'shotgun' pleading of the kind we have condemned repeatedly . . . . It is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2). It is fifty-eight pages long. It names fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of. Each count incorporates by reference the allegations made in a section entitled 'General Factual Allegations — which comprises 146 numbered paragraphs — while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." Magluta, 256 F.3d at 1284.

presentation of factual allegations sufficient to state a plausible claim for relief as to each defendant); e.g. Sollberger v. Wachovia Securities, LLC, No. SACV 09-0766 AG (Anx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (unpublished).[16] Here, for instance, the individual defendants involved in incidents where plaintiff allegedly exercised his free speech rights are not necessarily the same as those involved in making the personnel decisions plaintiff alleges amount to adverse employment actions, yet more often than not, the allegations in plaintiffs' pleading fail to distinguish between such defendants.

Accordingly, plaintiff's complaint is dismissed for failure to give each defendant proper notice of the claims against him or her.  Such dismissal is without prejudice, and plaintiff shall have the opportunity to amend his pleading to remove the frequent broad references to "defendants."  Plaintiff shall amend every claim for relief such that each is made as against one or more defendants specifically identified by name.

> ## 2.   *Irrelevant Allegations, Contradictory Allegations, And Legal Conclusions Do Not Facilitate A "Short And Plain" Statement Of Plaintiffs' Claims*

Further, factually unsupported claims framed as legal conclusions and mere recitations of the legal elements of a claim do not give rise to cognizable claims for relief.  See Iqbal, 129 S. Ct. at 1949-51 (compliance with Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me-accusation"); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

While defendants are correct that many of plaintiff's allegations are not directly relevant to his claims for relief (i.e., allegations about his polygraph test, about how defendant

---

[16]  "One common theme of Rule 8(a), Rule 9(b), Iqbal, [and] Twombly . . . is that plaintiffs must give the defendants a clear statement about what the defendants allegedly did wrong[;]" and "[o]ne common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong.  Another type is where the plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then 'each count incorporates every antecedent allegation by reference.'"  Sollberger, 2010 WL 2674456, at *4.

1   Swift attended law school, about how a video "may" exist of his conversation with defendant

2   Bell, etc.) (Mot. to Dismiss at 8), plaintiff's inclusion of these allegations does not necessarily

3   render his pleading subject to dismissal.  As described above, there are various specific factual

4   allegations in the SAC, including dates of events, names of locations, and names of individual

5   witnesses and defendants, and it is possible to read those factual allegations as supporting

6   plaintiff's claims for relief.  While Rule 8(a) requires a "short and plain" statement of the claims

7   showing entitlement to relief, it does not require that *all* extraneous allegations be removed for a

8   pleading to be deemed sufficient.  Here, while plaintiff's inclusion of certain "irrelevant"

9   allegations within his pleading is not itself sufficient to warrant dismissal of the pleading, the

10  undersigned cautions plaintiff that the inclusion of these and similarly tangential allegations does

11  not facilitate a "short and plain" statement of plaintiff's claims.[17]

12          Similarly, defendants are correct that plaintiff often uses legal conclusions in his

13  pleading; for instance, "his pronouncement that the DOJ's zero tolerance policy violates the Free

14  Exercise Clause," among other similar allegations.  (Mot. to Dismiss at 8.)  While plaintiff's

15  pleading does include a number of factual allegations that could potentially support his claims for

16  relief, it would behoove plaintiff to review defendants' moving papers and omit the identified

17  conclusory allegations.  Pleading legal conclusions adds nothing of substance to his pleading, and

18  plaintiff has expressed willingness to excise such allegations.  (Oppo. at 2-3.)  Plaintiff is also

19  cautioned that the court will not consider conclusory language when analyzing whether a given

20  claim is sufficiently supported with factual allegations.  The undersigned further reminds plaintiff

21  that the inclusion of conclusory allegations does not facilitate a "short and plain" statement of

22

23          [17]  The same is true with respect to potentially contradictory allegations in the pleading.
      Defendants are correct that some of plaintiff's allegations might conflict with each other.  (Mot. to
      Dismiss at 8.)  Defendants highlight the fact that Paragraph 34 of the SAC alleges that plaintiff sent

24    an email on February 10, 2010, and Paragraph 41 suggests that plaintiff was "reprimanded" for *this*
      email, but gives "February 3, 2010" as the date of the email.  (Second Am. Compl. ¶¶ 34, 41.)

25    Despite defendants' example, however, the parties can iron out this sort of "conflict" during
      discovery.  Defendants have not cited authorities suggesting that two paragraphs potentially revealing

26    a discrepancy in dates warrants dismissing a complaint.

1  plaintiff's claims.

2        3.   *Conclusion*

3        Defendants' motion to dismiss pursuant to Rule 8 is granted and plaintiff's

4  pleading is dismissed.  However, such dismissal shall be without prejudice.  Plaintiff shall amend

5  each of his claims for relief such that, immediately below the heading for each claim, plaintiff

6  lists the name(s) of each defendant against whom each given claim is directed.  Plaintiff's

7  amended pleading should clearly notify each defendant of the factual allegations against them, as

8  well as clearly notify each defendant which claim(s) are directed at them.  If plaintiff intended to

9  name certain individuals as mere witnesses to incidents involving him, plaintiff should not refer

10 to these individuals as "defendants."  Plaintiff shall not name individuals as defendants unless he

11 presently has a good faith basis for believing they should be so named — and plaintiff's belief

12 that future discovery *might* reveal a basis for naming a given individual as a defendant is not a

13 present good faith basis.  Plaintiff is shall also limit his allegations only to those non-conclusory

14 allegations that are relevant to his claims.

15        B.   Plaintiff's "Motion for Consideration of Additional Material" Is Construed
             As A Request For Judicial Notice And Is Denied

16

17        Plaintiff's "Motion for Consideration of Additional Material" (Dkt. No. 22) is

18 construed as a request for judicial notice and denied[18], as the materials described therein are not

19 judicially noticeable.

20        Plaintiff asks the undersigned to take judicial notice of plaintiff's polygraph test

21 results, as well as "judicial notice of the fact that . . . installation of video cameras[] in and

22 around assets in both the public and private sectors[] is due[] in large part to the probative value

23 of the images captured by such technology."  (Oppo. at 12.)  Plaintiff takes issue with

24 _____

25        [18]  The undersigned also denies plaintiff's request to have the motion to dismiss construed
   as a motion for summary judgment to enable the court to consider plaintiff's polygraph test results,
26 as such results are not relevant to the sufficiency of plaintiff's pleading.

1    defendants' failure to examine video footage captured on such cameras when conducting an

2    investigation of his behavior.  (Id.)

3            Federal Rule of Evidence 201 permits a court to take judicial notice of an

4    adjudicative fact "not subject to reasonable dispute" because the fact is either: "(1) generally

5    known with the territorial jurisdiction of the trial court or (2) capable of accurate and ready

6    determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

7    Evid. 201(b); e.g. Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035,

8    1042 (C.D. Cal. 1998) (citing Fed. R. Evid. 201).  The court can also take judicial notice of

9    matters of public record, such as pleadings in another action and records and reports of

10   administrative bodies.  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988).

11   Here, the materials plaintiff offers do not fall into a category of judicially noticeable documents,

12   and plaintiff's request is denied.

13          C.      Plaintiffs' Pleading Likely Suffers From Other Defects, But The
                    Undersigned Declines To Reach Them At This Time
14

15          While the undersigned resolves the pending motion to dismiss on Rule 8 grounds

16   as described above, plaintiff should not take this to mean that his complaint is otherwise

17   sufficient.  As described above, the complaint fails to specify which allegations and claims are

18   aimed which defendant(s).  Given that failure, the undersigned cannot fully analyze whether each

19   claim for relief is supported with factual allegations with respect to a given defendant.[19]

20   Accordingly, the undersigned will not itemize each legal element of each and every claim and

21   will not attempt to trace whether the verbose complaint contains factual support for each such

22   element.  That undertaking is plaintiff's task.

23          While the undersigned declines to attempt to analyze the substance of each of

24

_____

25      [19]  Defendants also argue that various individual claims for relief should be dismissed for
     failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss at 9-
26   15.)

plaintiffs' claims in light of the complaint's verbosity and failure to specify defendants, however, this is not to say that those claims are sufficient under Federal Rule of Civil Procedure 12(b)(6). It is likely that the opposite is true.  For instance, the undersigned notes that the complaint regularly suggests a "conspiracy" by all "defendants," yet none of these allegations is clearly supported with factual allegations.  (E.g., Compl. at ¶¶ 139 (conclusorily alleging defendants were "of one mind"), 146, 164.)  Plaintiff should reassess whether he truly has factual bases for each of his claims, and if he does, plaintiff should insert those specific factual bases into his amended pleading.  In any event, prior to amending his pleading, plaintiff should closely examine the authorities and arguments raised in the defendants' motion to dismiss and in the remainder of this order.  If plaintiff is able to determine in good faith that any of defendants' arguments are well-taken, plaintiff should take it upon himself to excise any improper claims or allegations rather than leaving that task to the court.

While the undersigned resolves the pending motion to dismiss pursuant to Rule 8, the remainder of this order is intended to offer some guidance to both parties.  As described below, plaintiff will likely need to revise some or all of his claims.  Similarly, defendants will likely need to address additional authorities if they wish to challenge plaintiffs' claims should they remain in future pleadings.  Notwithstanding this discussion, however, the undersigned clarifies that this order grants defendants' motion pursuant to Rule 8(a), not Rule 12(b)(6).

1.  *First Claim For Relief: "Violation Of The Free Speech Clause" (Second Am. Compl. ¶¶ 124-36)*[20]

Defendants characterize plaintiff's First Amendment claim as arising from two different instances of alleged "speech."  (Mot. to Dismiss at 10-11.)  First, the SAC alleges that

---

[20]  As an initial matter, plaintiff's "First Amendment" claim should be asserted through Section 1983.  See Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006) (Section 1983 "is the vehicle whereby plaintiffs can challenge actions by government officials."); Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 611 (2008) (reiterating that "§ 1983 provides a cause of action for all citizens injured by an abridgment of [the] protections" found in the "Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution").

1  plaintiff wrote an email to defendant Cooper on February 10, 2010, regarding whether a DOJ

2  employee had damaged DOJ property, and that this amounts to protected speech.  (Second Am.

3  Compl. ¶¶ 30-45 (allegations regarding the Property Damage Email).)  Second, the SAC alleges

4  that plaintiff had a lunchtime conversation with Defendant Bell and others outside defendants'

5  office building and that the conversation addressed cigarette smoking, psychosexual

6  development, and the "oral stage," topics that plaintiff alleges amount to protected speech.  (Id.

7  ¶¶ 49-51 (allegations regarding the Smoking Conversation).)

8          In evaluating a First Amendment retaliation claim, the Ninth Circuit Court of

9  Appeals uses "a sequential five-step series of questions."  Gibson v. Office of Atty. Gen., State of

10 California, 561 F.3d 920, 925 (9th Cir. 2009) (citing Eng v. Cooley, 552 F.3d 1062, 1070 (9th

11 Cir. 2009).)  Those questions are as follows: "(1) whether the plaintiff spoke on a matter of

12 public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3)

13 whether the plaintiff's protected speech was a substantial or motivating factor in the adverse

14 employment action; (4) whether the state had an adequate justification for treating the employee

15 differently from other members of the general public; and (5) whether the state would have taken

16 the adverse employment action even absent the protected speech."[21]  Id.

17          Unlike the issue of whether the plaintiff spoke as a private citizen or as a public

18 employee, which presents a mixed question[22] of fact and law, the "public concern inquiry is

19

20     [21]  See also Jacobson v. Schwarzenegger, 650 F. Supp. 2d 1032, 1050-51 (C.D. Cal. 2009)
21 (holding that, on summary judgment, the plaintiff has the burden of showing that: (1) "the speech
   addressed an issue of public concern"; (2) "the speech was spoken in the capacity of a private citizen
   and not a public employee"; and (3) "the state took adverse employment action" and the speech "was
22 a substantial or motivating factor in the adverse action."  [Citation.]  Only if plaintiff passes these
   three tests does the burden shift to the defendants to show that, under the Pickering balancing test,
23 the government's interests outweigh the plaintiff's First Amendment rights, or that it would have
   taken the same action even in the absence of the protected conduct.") (internal citations omitted)
24 (quoting Eng, 552 F.3d at 1070)).

25     [22]  "[T]he inquiry into whether a public employee's speech is protected by the First
   Amendment is no longer purely legal and presents a mixed question of fact and law."  Posey v. Lake
26 Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008).

purely a question of law . . . ." Gibson, 561 F.3d at 925. The Supreme Court has held that speech involves a matter of "public concern" when it fairly can be said to relate to "any matter of political, social, or other concern to the community." Id. (citing Connick v. Myers, 461 U.S. 138, 146 (1983)). Further, "[s]peech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies." Id. (citing McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)).[23]

Generally, when an employee or independent contractor complains about his own job treatment, his speech does not address a matter of public concern. Thomas v. City of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004) ("[T]he type of personnel matters that we have deemed unprotected under the public concern test are employment grievances in which the employee is complaining about her *own* job treatment, not personnel matters pertaining to others." (emphasis in original)); see also Robinson v. York, 566 F.3d 817, 823 (9th Cir. 2009) ("Reports pertaining to *others*, even if they concern personnel matters including discriminatory conduct, can still be 'protected under the public concern test.'") (quoting Thomas, 379 F.3d at 808) (emphasis added). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147.

---

[23] "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Gibson, 561 F.3d at 926 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Id. (citing Connick, 461 U.S. at 146).

1          a.      *"Speech" In The Form Of The "Property Damage Email"*

2          As to the Property Damage Email, defendants argue that the email was written in

3 the course and scope of plaintiff's employment duties and, therefore, that plaintiff was not

4 speaking as a private citizen for First Amendment purposes.  (Mot. to Dismiss at 10-11 (citing

5 Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).)  Defendants argue that the Property Damage

6 Email represents plaintiff's comments "about a case he was working on involving a DOJ

7 employee," and plaintiff "may not have agreed about how DOJ was handling the case, but that

8 does not insulate him from discipline."  (Id.)  Defendants also argue that the email does not

9 address a matter of "public concern," and that plaintiff does not allege an "adverse action" that

10 resulted from his speech.  (Reply at 5.)

11          In his Opposition, plaintiff does not substantively respond to any arguments about

12 the "Property Damage Email," focusing solely on the speech claims arising from the Smoking

13 Conversation.  (Oppo. at 5-7.)[24]  The SAC does allege, however, that plaintiff sent the email after

14 working hours and from his personal email account.  (Second Am. Compl. ¶ 34.)

15          While speech made pursuant to an employee's official duties is not typically

16 protected speech, Garcetti, 547 U.S. at 421; defendants have not yet shown that plaintiff's

17 Property Damage Email was written pursuant to plaintiff's official duties warranting dismissal at

18 the pleading stage.[25]

19

---

20     [24] From plaintiff's current pleading, it is unclear whether plaintiff intends to premise his First

21 Amendment claim on the Property Damage Email, versus intending that claim to arise solely from the Smoking Conversation.  It would behoove plaintiff to clarify what "speech" he alleges gives rise to his First Amendment claim.

22

23     [25] In Garcetti, for instance, the speaker wrote an internal memo that he did not dispute was written "pursuant to his duties as a prosecutor."  Garcetti, 547 U.S. at 421.  The Supreme Court

24 reversed the Ninth Circuit Court of Appeals' earlier reversal of the district court's grant of summary judgment, holding that "when public employees make statements pursuant to their official duties,

25 the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Id.  The Supreme Court clarified that the plaintiff in Garcetti "wrote his disposition memo because that is part of what he, as a calendar

26 deputy, was employed to do."  Id. (further clarifying that such memo was "written pursuant to

23

1      First, it is "a mixed question of fact and law" whether plaintiff's email was written

2  as part of his job duties or outside the scope of those duties.  See Posey, 546 F.3d at 1128-29

3  ("the scope and content of a plaintiff's job responsibilities can and should be found by a trier of

4  fact . . .").  Because this is a "mixed question," if defendants wish to continue to challenge

5  plaintiff's claim on this ground, defendants will need to provide authorities confirming that the

6  undersigned can determine  at the pleading stage whether given speech occurred as part of

7  plaintiff's job duties as a matter of law.

8      Second, the SAC specifically alleges that plaintiff was reprimanded for the email

9  *because* such an email was *outside* the scope of plaintiff's job duties.  (Second Am. Compl. ¶ 41,

10  45 (alleging that defendant Swift had described plaintiff's email as outside plaintiff's assigned

11  "job task" and described plaintiff as having "abandoned" his job duties in sending the email).)

12  The SAC alleges that plaintiff had been assigned to the case involving another employee's

13  alleged property damage and was tasked with entering "minor information" into a letter

14  previously drafted by a Deputy Attorney General regarding the property damage, and "did not

15  include a request to assess the degree of the property damage, or the validity of the property

16  damage claim."  (Id. ¶¶ 37, 40.)  As currently pleaded, then, the SAC alleges that plaintiff drafted

17  the Property Damage Email apart from his assigned "job tasks."  (Id. ¶¶ 41, 45.)[26]  Defendants

18  have not cited to or analogized to any authorities suggesting that, where a pleading contains

19  allegations like these, courts may dismiss First Amendment retaliation claims at the pleading

20  stage simply because the speech in question *may have* occurred within the scope of plaintiff's job

21  duties.

22      Defendants also argue that the email does not address a matter of "public

23  concern."  (Reply at 5.)  However, defendants cite to no authorities analyzing speech similar to

24  ────────────

[plaintiff's] official duties.")

25

26  [26] Defendants concede that the SAC does not allege what actually *were* plaintiff's job duties,
although the SAC does allege what were *not* plaintiff's job duties.  (Mot. to Dismiss at 2 n.4.)

1   that within the Property Damage Email and finding that such speech did not address a matter of

2   public concern as a matter of law at the pleading stage.

3          Defendants also argue that plaintiff does not allege an "adverse action" that

4   resulted from his speech.  (Reply at 5.)  However, plaintiff alleges that he received a "written

5   reprimand" and negative performance appraisal due at least in part to the Property Damage

6   Email, and defendants do not cite any authorities supporting their implicit argument that neither

7   of these can ever amount to an adverse employment action.  (Second Am. Compl. ¶¶ 44-48.)

8          Because plaintiff's pleading is unclear regarding the specific harms and/or

9   "adverse actions" he alleges he suffered as a result of his speech, it would behoove plaintiff to

10  clarify these issues in an amended pleading.  It would also behoove plaintiff to clarify precisely

11  what "speech" he alleges gives rise to his First Amendment claim.  Likewise, defendants should

12  be prepared to discuss authorities on matters of "public concern" and what constitutes an

13  "adverse action," especially authorities addressing these issues at the pleading stage.

14              b.    *"Speech" In The Form Of The "Smoking Conversation"*

15         As to the Smoking Conversation, defendants argue that any speech occurring

16  therein did not address a "matter of public concern," because nothing about the conversation

17  amounted to "a subject of legitimate news interest; that is, a subject of general interest and of

18  value and concern to the public."  (Mot. to Dismiss at 11 (quoting <u>City of San Diego v. Roe</u>, 543

19  U.S. 77, 83-84 (2004).)  Defendants argue, with no citation to authority, that "[o]ne sincerely

20  doubts that [] members of the public spend significant time during their lunch breaks arguing

21  about Freud and his theories on psychosexual development."  (<u>Id.</u>)

22         In response, plaintiff argues that his conversation addressed "cigarettes smoking,

23  addiction, and the current health crisis."  (Oppo. at 6.)

24         Notwithstanding defendants' "sincere[] doubts" about whether the Smoking

25  Conversation involved discussion of matters of public concern, defendants have not cited to any

26  authorities confirming that such conversation cannot possibly amount to a matter of "public

concern" as a matter of law.  (Mot. to Dismiss at 11.)  While the "public concern" element *can* be determined as a matter of law, Gibson, 561 F.3d at 925 (the "public concern inquiry is purely a question of law . . . ."), defendants have not cited to or analogized to authorities involving similar alleged speech and finding it not to meet the "public concern" element.

While courts have held that an employee's speech about "internal workplace grievances" does not touch on matters of "public concern," see Connick, 461 U.S. at 143, defendants have not shown that plaintiff's Smoking Conversation speech was akin to speech about an "internal workplace grievance."  "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'"  Johnson v. Multnomah Cnty., 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick, 461 U.S. at 146).  Indeed, matters of public concern are "typically matters concerning government policies that are of interest to the public at large, a subject on which public employees are uniquely qualified to comment."  Roe, 543 U.S. at 80.  However, outside this category, the Court has explained that "when government employees speak or write on their own time on topics unrelated to their employment, the speech can have First Amendment protection, absent some governmental justification 'far stronger than mere speculation' in regulating it."  Id. (citing United States v. Treasury Employees, 513 U.S. 454, 465, 475 (1995)).

Here, defendants have not yet demonstrated that conversations about smoking, Freud, or psychosexual development do not, as a matter of law, involve matters of "public concern."  While these topics might not amount to a comment on the workings or functioning of government or plaintiff's public employer, defendants have not cited authorities supporting the proposition that speech must necessarily fall into either category in order to amount to speech regarding matters of "public concern."

Defendants also argue that plaintiff does not allege an "adverse action" that resulted from his speech.  (Reply at 5.)  But, plaintiff alleged that he received a Memorandum of Instruction in his personnel file, as well as a negative performance review, both of which

allegedly arose at least in part from plaintiff's co-workers' alleged complaints following the

Smoking Conversation.  Again, defendants have not cited to or analogized to authorities

suggesting that a Memorandum of Instruction (i.e., a warning letter) and/or a negative

performance review cannot ever be considered adverse employment actions.

c.   *Conclusion*

Should plaintiff's amended pleading include a "First Amendment" claim, the

parties should be prepared to address the above-described authorities.  It would behoove plaintiff

to clarify what "speech" he alleges gives rise to his First Amendment claim.  Should defendants

attack such claim in a future motion to dismiss, defendants should, at minimum, address the

authorities cited above, as well as authorities addressing whether such claims are sufficient to

survive the pleading stage.

2.   *Second Claim For Relief: "Conspiracy" In Violation Of 42 U.S.C. §§ 1983, 1985(3), and 18 U.S.C. § 242 (Second Am. Compl. ¶¶ 137-53)*

a.   *"Persons" Under Section 1983 and 1985*

Defendants argue that plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 fail

because plaintiff has named individual defendants in their "official capacities" as state officials

and workers, and individuals so named are not "persons" under Sections 1983 and 1985.  (Mot.

to Dismiss at 12 (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989); Reply

at 5.)

State officials sued for monetary damages in their official capacities are not

"persons" within the meaning of Section 1983 and are therefore generally entitled to Eleventh

Amendment immunity[27] because such suits are viewed as suits against the state itself.  Flint v.

Dennison, 488 F.3d 816, 824-25 (9th Cir. 2007); see also Hafer v. Melo, 502 U.S. 21, 25 (1991)

---

[27]  The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens or citizens of other states.  See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).

1   ("Although state officials literally are persons, an official-capacity suit against a state officer is

2   not a suit against the official but rather is a suit against the official's office.  As such it is no

3   different from a suit against the State itself") (citation and quotation marks omitted).  In addition,

4   claims seeking relief premised solely on a state's compliance with state law are barred by the

5   Eleventh Amendment.  See Suever v. Connell, 439 F.3d 1142, 1148 (9th Cir. 2006).  However,

6   Eleventh Amendment immunity for state officials acting in their official capacities is limited to

7   claims for damages and does not apply to a claim for prospective injunctive relief to remedy

8   ongoing violations of federal law.  See id.; Flint, 488 F.3d at 825 (citing Will, 491 U.S. at 71

9   n.10).[28]

10          Here, it appears that plaintiff seeks injunctive and declaratory relief, not simply

11   money damages.  (Second Am. Compl. ¶¶ 205-06 (seeking injunctive relief in the form of

12   creating a "non-discriminatory written policy" regarding employee "speech and expression" and

13   the "transfer of plaintiff to a comparable position").)  Defendants have not addressed the fact that

14   plaintiff may seek injunctive and declaratory relief, and argues only that plaintiff cannot sue

15   defendants in their official capacities because they are not "persons" under Sections 1983 and

16   1985.  (Reply at 5 (citing Will).)  Defendants have not addressed the Supreme Court's

17   pronouncement that a state official sued in her official capacity is a "person" for purposes of

18   Section 1983 when she is sued for prospective relief.  See Flint, 488 F.3d at 825 ("When sued for

19   prospective injunctive relief, a state official in his official capacity is considered a "person" for §

20   1983 purposes.");  Will, 491 U.S. at 71 n.10 ("Of course a state official in his or her official

21   capacity, when sued for injunctive relief, would be a person under § 1983 because

22

_____

23       [28]  Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh
     Amendment bars suits for money damages in federal court against a state, its agencies, and state
24   officials acting in their official capacities.")  The Ninth Circuit Court of Appeals has recognized that
     "[t]he State of California has not waived its Eleventh Amendment immunity with respect to claims
25   brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended
     to abrogate a State's Eleventh Amendment immunity."  Dittman v. California, 191 F.3d 1020,
26   1025-26 (9th Cir. 1999) (citations and quotation marks omitted).

1   'official-capacity actions for prospective relief are not treated as actions against the State.'")

2   Also, defendants have not addressed the fact that the caption to plaintiff's pleading specifically

3   names each defendant in his or her "official" *and* "individual" capacities.  (Second Am. Compl.

4   at 1.)  If defendants choose to re-raise a similar argument in response to plaintiff's amended

5   pleading, defendants should be prepared to address the above-described authorities.

6            b.    *Failure to Allege Facts Supporting A Section 1983 Claim And A Section*
                   *1983 "Conspiracy" Claim*
7

8            Defendants also argue that plaintiff has failed to allege sufficient facts to allow the

9   court to analyze whether the lawsuit is barred by "qualified immunity" as a matter of law.  (Mot.

10  to Dismiss at 13.)  Defendants argue that the SAC fails to allege specific facts establishing that

11  each defendant knew and participated in alleged constitutional violations.  (Mot. to Dismiss at

12  12; Reply at 5-7.)  Defendants argue that plaintiff "does not allege personal acts by any of the

13  defendants that show that the defendant deprived him of a property or liberty interest without due

14  process of law."  (Mot. to Dismiss at 12.)  Defendants also argue that the allegations in the SAC

15  are insufficient to state a Section 1983 claim, because plaintiff does not allege "how his job has

16  been restricted, and by which individual defendants."  (Id.)  Finally, defendants argue that

17  plaintiff "also failed to allege that he was subjected to an employment action."  (Id.)  Plaintiff's

18  Opposition does not substantively respond to any of these arguments.  (Oppo. at 7.)

19           c.    *Qualified Immunity*

20           While the undersigned does not make a determination on the issue here, the

21  undersigned notes that the muddled nature of plaintiff's pleading is likely to hinder the court's

22  examine whether "qualified immunity" might apply as a matter of law.  This limitation is

23  primarily because plaintiff has not alleged which "clearly established" constitutional right he

24  claims he was denied, let alone when and how such denial occurred.  Plaintiff's sweeping

25  allegation that he was denied an "opportunity to be heard" likely does not suffice, as plaintiff has

26  not clearly alleged how this "opportunity" was actually denied, let alone when and by whom.

1    The Ninth Circuit Court of Appeals has "stress[ed] that 'the right allegedly violated must be

2    defined at the appropriate level of specificity before a court can determine if it was clearly

3    established.'" Dunn v. Castro, 621 F.3d 1196, 1201 (9th Cir. 2010) (citing Wilson v. Layne, 526

4    U.S. 603, 615 (1999)).  "The plaintiff bears the burden of proving that the rights [he] claims were

5    'clearly established' at the time of the alleged violation."  Robinson v. York, 566 F.3d 817, 826

6    (9th Cir. 2009) (citation and quotation marks omitted; modification in original).  It would likely

7    behoove plaintiff to clarify the factual bases for his constitutional claims, and to clarify what

8    particular rights he claims were violated.

9              d.    *Failure To Allege How Each Individual Defendant Personally Violated*
                     *Rights*
10

11             As described above in the discussion of plaintiff's failure to satisfy the

12   requirements of Rule 8, the SAC does not give each defendant notice of the claims against him or

13   her.  For similar reasons, the SAC likely fails to allege specific facts establishing that each

14   defendant knew and participated in alleged constitutional violations — plaintiff "does not allege

15   personal acts by any of the defendants that show that the defendant deprived him of a property or

16   liberty interest without due process of law."  (Mot. to Dismiss at 12.)

17             Generally, with respect to individual defendants, "Section 1983 imposes civil

18   liability upon an individual who under color of state law subjects or causes, any citizen of the

19   United States to the deprivation of any rights, privileges or immunities secured by the

20   Constitution and laws."  Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C. §

21   1983).  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

22   right secured by the Constitution or laws of the United States was violated, and (2) that the

23   alleged violation was committed by a person acting under the color of State law."  Long v.

24   County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48

25   (1988)); accord Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) ("To make

26   out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting

30

under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes" (citation omitted).).

More importantly, a plaintiff must allege in any amended complaint how *each* individual defendant was personally involved in the deprivation of his civil rights.  See, e.g., James v. Rowlands, 606 F.3d 646, 653 n.3 (9th Cir. 2010) ("Of course, § 1983 imposes liability on a defendant only if he or she personally participated in or directed a violation."); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation . . . ."); Barren, 152 F.3d at 1194 ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement of the defendant.").

Plaintiff's meandering pleading does not likely sufficiently allege that each of the eleven named individual defendants knew and participated in violation(s) of plaintiff's constitutional rights, and as discussed above, the complaint is unclear about which constitutional rights plaintiff alleges were violated and how they were violated by each named defendant.  For instance, plaintiff's conclusory allegation that defendants Kimberly Bell, Brea Noorani, Carrie Saulsberry, and Steve Wiley "agreed and were of one mind in alleging that the plaintiff engaged in conduct which violated the California DOJ's zero tolerance and non-discrimination policies and the California Penal Code (stalking)" does not suffice.  (Second Am. Compl. ¶ 139.)  Again, a laundry list of interactions with supervisors and then a sweeping reference to having been denied the "opportunity to be heard" is not likely to be sufficient to support Section 1983 claims against each named defendant.  Plaintiff alleges that a memorandum was placed in his file and that he received a somewhat negative performance review, but he does not clearly allege that either amounted to a deprivation of a property or liberty interest, and does not clearly allege how each named defendant participated in such deprivation.

1    As stated above, the undersigned has already granted defendants' motion to

2 dismiss on Rule 8 grounds, largely due to the complaint's failure to specify which claims are

3 directed at which defendants.  In crafting his amended pleading, however, it would behoove

4 plaintiff to examine the authorities cited in this particular section as well.

5    e.    *Allegations Otherwise Likely Insufficient To Support A Section 1983*
    *Claim*

6

7    Defendants also argue that the allegations in the SAC are insufficient to state a

8 Section 1983 claim, because plaintiff does not allege "how his job has been restricted, by which

9 individual defendants, and how this violated due process."  (Mot. to Dismiss at 13.)  Defendants

10 argue that plaintiff "also failed to allege that he was subjected to an employment action that

11 would implicate due process rights or explain why his statutory rights under the civil service

12 statute did not satisfy due process."  (Id.)

13    Plaintiff's complaint appears to allege, albeit unclearly, that plaintiff was denied

14 his right to an "opportunity to be heard" prior to having the Memorandum of Instruction placed

15 in his file.  However, defendants have not argued that, as a matter of law, this allegation cannot

16 support a Section 1983 claim or that it does not amount to an "employment action" that would

17 implicate constitutional rights.  (Mot. to Dismiss at 13.)  Similarly, defendants have not argued

18 that placement of documents in plaintiff's personnel file cannot, as a matter of law, amount to a

19 restriction of plaintiff's job.  In any event, however, aside from the SAC's references to the

20 Memorandum of Instruction, plaintiff's meandering pleading does not clearly describe the

21 particular "employment action" (or "actions") that plaintiff believes triggered his right to an

22 opportunity to be heard.  Other than the placement of the Memorandum of Instruction in his file,

23 plaintiff has not clearly alleged how his job has been restricted or precisely how he has been

24 harmed by the denial of such right.  It would behoove plaintiff to amend his pleading to clarify

25 these issues.

26 ////

1          f.        *"Conspiracy" In Violation Of 42 U.S.C. § 1983*

2          To state a viable claim of "conspiracy" to violate a plaintiff's constitutional rights

3   under 42 U.S.C. § 1983, "the plaintiff must state specific facts to support the existence of the

4   claimed conspiracy."  Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989) (citation

5   omitted) (noting that plaintiff's pleading contained only "conclusory allegations.")  "To establish

6   liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an

7   agreement or meeting of the minds' to violate constitutional rights.  [Citation.]  'Such an

8   agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as

9   the actions of the defendants.'"  Crowe v. Cnty. of San Diego, 608 F. 3d 406, 440 (9th Cir. 2010)

10  (internal citations omitted).

11         Plaintiff alleges that a Memorandum of Instruction was placed in his file, that he

12  had a Warning Meeting with two supervisors, and that he received a somewhat negative

13  performance review, but he does not clearly allege factual allegations that would support the

14  existence of a conspiracy to violate his rights.  While the undersigned does not decide the issue at

15  this time, it is likely that plaintiffs' pleading fails to include the requisite non-conclusory facts

16  supporting a "meeting of the minds" to violate his constitutional rights, let alone facts supporting

17  the involvement of "each participant" in the alleged conspiracy.  It would behoove plaintiff to

18  allege the factual bases for his "conspiracy" claims.  If he cannot do so in good faith, plaintiff

19  should omit such claims.

20         g.        *Conclusion as to Section 1983 Claims*

21         Again, while the undersigned dismisses plaintiff's pleading on Rule 8 grounds and

22  does not make determinations regarding the sufficiency of plaintiff's pleading pursuant to Rule

23  12(b)(6), the undersigned nonetheless directs plaintiff to the above-described authorities.  Should

24  plaintiff wish to continue to pursue Section 1983 claims, plaintiff's pleading should clearly

25  identify: (1) what specific constitutional right or rights plaintiff claims he was denied, (2) when

26  and how such denial(s) occurred, (3) which specific defendants personally participated in such

1  denial(s), and how each individual defendant participated, (4) what "employment action" (or

2  actions) plaintiff believes gave rise to his right to an opportunity to be heard, (5) how plaintiff

3  was denied an opportunity to be heard, (6) how plaintiff believes his job was restricted as a result

4  of the denial of an opportunity to be heard, and (7) whether plaintiff alleges denials of

5  constitutional rights other than the right to an opportunity to be heard.

6             h.       _Other "Conspiracy" Claims_[29]

7             With respect to plaintiff's claim for "conspiracy" in violation of 42 U.S.C. §

8  1985(3), defendants argue that the SAC fails to allege "specific facts linking each defendant to a

9  Section 1983 violation."  (Mot. to Dismiss at 12 (citing Ortez v. Washington County, State of

10 Oregon, 88 F.3d 804, 809-10 (9th Cir. 1996).)  Plaintiff responds that because the SAC

11 "introduce[s] each Defendant, and describe[s] both their professional[] and individual

12 responsibilities . . . an issue or inference may be drawn that the particular Defendants' acts or

13 omissions may have a role in the deprivation of Plaintiff's rights."  (Oppo. at 12.)

14            Section 1985 "proscribes conspiracies to interfere with civil rights."  Sanchez v.

15 City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991) (en banc).  To state a cause of action

16 under § 1985(3), plaintiff must allege four elements: (1) a conspiracy; (2) for the purpose of

17 depriving, either directly or indirectly, any person or class of persons of the equal protection of

18 the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of

19 this conspiracy; (4) whereby a person is either injured in his person or property or deprived of

20 any right or privilege of a citizen of the United States.  Sever v. Alaska Pulp Corp., 978 F.2d

21 1529, 1536 (9th Cir. 1992) (citing United States Bhd. of Carpenters & Joiners of America v.

22

23         [29]  As to plaintiff's claim for "conspiracy" in violation of 18 U.S.C. § 242, defendants note
    that, while plaintiff's second claim for relief mentions "18 U.S.C. § 242," (Second Am. Compl. at
24  28), that criminal statute does not provide a basis for civil liability.  (Mot. to Dismiss at 12, n.8
    (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) ("These criminal provisions
25  [including 18 U.S.C. § 242] . . . provide no basis for civil liability".)  Plaintiff does not substantively
    respond to this argument.  Accordingly, plaintiff is directed to review his claim under "18 U.S.C. §
26  242," and plaintiff should omit that claim from future pleadings if he no longer believes it to be
    proper.

1    Scott, 463 U.S. 825, 828-29 (1983)).

2            A claim under § 1985 "must allege facts to support the allegation that defendants

3    conspired together.  A mere allegation of conspiracy without factual specificity is insufficient."

4    Karim-Panahi, 839 F.2d at 626.  "[T]he second of these four elements requires that in addition to

5    identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right

6    motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus

7    behind the conspirators' action.'"  Sever, 978 F.2d at 1536 (quoting Griffin v. Breckenridge, 403

8    U.S. 88, 102 (1971)).  A pleading that conclusorily alleges a "conspiracy" to violate the

9    plaintiff's rights, without more, fails to state a viable conspiracy claim under Section 1985.  E.g.,

10   Torres v. Perata, No. CIV S-07-2593 JAM EFB PS, 2009 WL 2985478, at *4 (E.D. Cal. Sept.

11   16, 2009) (unpublished) (dismissing § 1985(3) claim with prejudice due to lack of plausible

12   factual allegations supporting claimed "conspiracy" to violate civil rights).

13           Here, plaintiff has pleaded a laundry list of allegations against a laundry list of

14   individual defendants.  It is not for the court or the defendants to "infer" or guess how each

15   defendant may have participated in a "conspiracy" to violate plaintiff's constitutional rights.

16   Plaintiff has further confused matters by explaining that some of the named "defendants" against

17   whom he alleges a conspiracy are actually no more than "witnesses" to events relevant to his

18   case.  (Oppo. at 12 ("Plaintiff believes that including as Defendants[] individuals named as

19   witnesses in the Defendants' adverse employment action against the Plaintiff[] is not sufficient to

20   make a case of conspiracy against those Defendants.")  Although the undersigned does not reach

21   the issue of the sufficiency of plaintiff's "conspiracy" claims in this order, should plaintiff

22   continue to pursue this claim, it would behoove plaintiff to allege how *each* defendant played a

23   role in the alleged conspiracy, and to ensure that each element of the conspiracy claim must be

24   supported with non-conclusory, factual allegations.

25   ////

26   ////

1        3.     *Third Claim For Relief: "Due Process Clause"/ "Violation Of The*
        *Fourteenth Amendment" (Second Am. Compl. ¶¶ 154-60)*

2

3        As an initial matter, plaintiff's "Fourteenth Amendment" claim should be asserted

4 through Section 1983.  See Magana v. Northern Mariana Islands, 107 F.3d 1436, 1442-43 (9th

5 Cir. 1997) (citing Monroe v. Pape, 365 U.S. 167 (1961), overruled on other grounds in Monell v.

6 Department of Soc. Serv., 436 U.S. 658 (1978); Ngiraingas v. Sanchez, 495 U.S. 182, 187 (1990)

7 ("Section 1983 was originally enacted as § 1 of the Civil Rights Act of 1871. The Act was

8 enacted for the purpose of enforcing the provisions of the Fourteenth Amendment.")).[30]

9        The due process clause of the Fourteenth Amendment protects individuals against

10 governmental deprivations of "life, liberty, and property" without due process of law.  U.S.

11 Const., amend. XIV.  "[T]he touchstone of due process is protection of the individual against

12 arbitrary action of government."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)

13 (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also Squaw Valley Dev. Co. v.

14 Goldberg, 375 F.3d 936, 948 (9th Cir. 2004).  The due process clause confers both procedural

15 and substantive rights — i.e., due process violations can refer either to a denial of fundamental

16 procedural fairness (procedural due process violations) or the exercise of power without any

17 reasonable justification in the service of a legitimate governmental objective (substantive due

18 process violations).  See Lewis, 523 U.S. at 845-46.  "A procedural due process claim has two

19 elements: deprivation of a constitutionally protected liberty or property interest and denial of

20 adequate procedural protection."  Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher

21 Educ., 616 F.3d 963, 970 (9th Cir. 2010); accord Thornton v. City of St. Helens, 425 F.3d 1158,

22

23        [30] The Fourteenth Amendment does not create a direct cause of action.  Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995).  Instead, § 1983 provides a statutory cause of action for all citizens injured by an abridgment of the protections contained in the Constitution, including the

24 Equal Protection and Due Process Clauses of the Fourteenth Amendment.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 119-20 (1992); Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 611

25 (2008) (reiterating that "§ 1983 provides a cause of action for all citizens injured by an abridgment of [the] protections" found in the "Due Process Clauses of the Fourteenth Amendment, and other

26 provisions of the Federal Constitution").

1164 (9th Cir. 2005).

Here, plaintiff's "due process" claim is somewhat convoluted.  Beneath the heading for the claim, plaintiff alleges that defendants improperly refused to "investigate plaintiff's complaint of a violation of his Constitutional Rights in 2010." (Second Am. Compl. ¶ 155.)  Plaintiff also alleges he filed a "formal complaint" with his employer's "Equal Employment Equal Rights Office" (the "EER&R"), but that the EER&R "refused to take protective action."  (Id. ¶ 156.)[31]  Plaintiff also alleges that Swift's November 19, 2010 "over-the-phone performance appraisal" amounted to a deprivation of Due Process rights, but he does not allege how.  (Id. ¶¶ 157-58.)  Plaintiff also alleges he did not have an adequate "opportunity to be heard" prior to "the implementation of an adverse employment action," because plaintiff's statements were "made outside the administrative process and were made in defiance of . . . Swift's threat of additional adverse employment action if the plaintiff chose to respond."  (Id. ¶¶ 158-59.)  No additional factual allegations appear beneath the heading of plaintiff's "due process" claim, although all preceding allegations were incorporated by reference.  (Id. ¶ 154.)

The complaint does not clearly describe whether plaintiff intends to allege deprivation(s) of procedural due process rights, substantive due process rights, or both.  It appears plaintiff's due process claims arise from various interactions with his supervisors, including a Warning Meeting, the receipt of a Memorandum of Instruction, and a telephonic performance appraisal.  Plaintiff also alleges he was denied an "opportunity to be heard" prior to "implementation of an adverse employment action," but despite the numerous alleged interactions with his supervisors, plaintiff does not identify the *particular* "adverse employment action[s]" he claims entitled him to an "opportunity to be heard" or how such denial occurred.  (E.g., Second Am. Compl. ¶¶ 158-59.)

---

[31]  No factual allegations in the SAC clearly explain the nature or content of this "formal complaint."

1    A laundry list of factual allegations followed by a broad "due process" allegation

2  does not likely provide the defendants in this case with sufficient notice of the claims against

3  them.  In his Opposition, however, plaintiff significantly clarifies his intentions with respect to

4  the nature of his "due process" claim.  Specifically, plaintiff offers that his due process claim is

5  intended as a "procedural due process" claim arising from defendants' "zero tolerance" policy.

6  (Oppo. at 7-9.)  Plaintiff also appears to clarify that he intends to allege that his "procedural due

7  process rights" were deprived because he was not afforded an "evidentiary hearing" as a result of

8  defendants Smith and Jang having framed the Memorandum of Instruction as arising from a

9  "minor disciplinary matter."  (Id. at 8 n.13.)  A review of the rest of the pleading confirms that

10 plaintiff has indeed raised these allegations in his pleading, albeit in a somewhat "buried"

11 fashion, and that plaintiff did not clearly include these allegations beneath the heading for his

12 "due process" claim.[32]  The pleading also makes passing reference to having a "property interest"

13 in one's employment (Second Am. Compl. ¶ 113), but plaintiff stops short of actually alleging

14 that he has a property interest in his employment.

15    However, plaintiff's Opposition is not his pleading, and as currently pleaded the

16 SAC forces defendants and the court to treat every alleged interaction between plaintiff and his

17 supervisors as potentially supporting plaintiff's due process claim.  It would behoove plaintiff to

18 clarify his pleading with respect to this claim.  Plaintiff may wish to more clearly state, for

19 instance, which specific interactions with supervisors he believes support a procedural due

20

21    [32] The complaint alleges that defendant's "zero tolerance" policy lacks safeguards to ensure protection of plaintiff's First and Fourteenth Amendment rights.  (Second Am. Compl. ¶ 102.)

22 Plaintiff alleges that his employer's "classification scheme" for defining "adverse employment actions" does not "adequately protect employees' property interest[s] in their employment" because

23 it is insufficient to grant "full procedural due process rights" on every disciplinary matter, only granting "full" procedural rights upon "adverse employment actions which contemplate[] a

24 suspensive of five days or more."  (Id. ¶ 113.)  Plaintiff alleges that his employer purposefully gave him a "warning" rather than a suspension so as to avoid having to comply with "due process"

25 requirements.  (Id. ¶ 114.)  Plaintiff alleges that during the Warning Meeting, plaintiff requested names of witnesses and copies of their written statements, but Swift and Jang told him that he was

26 not entitled to these materials because he was not being subjected to any "adverse action."  (Id. ¶ 98.)

1  process claim.  Plaintiff may also wish to clarify whether plaintiff alleges that he himself has a

2  property interest in his continued employment, and may wish to allege facts supporting plaintiff's

3  theory regarding how and when he was allegedly deprived of such property interest.  Plaintiff

4  may wish to clarify which of his numerous alleged interactions with supervisors entitled him to

5  procedural due process in the form of an "opportunity to be heard" and an opportunity to review

6  "witness statements."  Plaintiff may wish to clarify whether he alleges denials of any other due

7  process protections aside from an "opportunity to be heard" and a failure to provide witness

8  statements.  It would behoove plaintiff to list specific interactions with supervisors — and any

9  other supporting factual allegations — directly beneath the heading of his due process claim,

10  along with a list of defendants against whom plaintiff asserts the claim.

11         Defendants express doubt regarding whether a "counseling memorandum" could

12  ever amount to deprivation of a property interest, as well as doubt regarding whether deprivation

13  of "witness statements" could amount to a deprivation of procedural due process, but defendants

14  do not cite authorities on either point.  (Reply at 6.)  Plaintiff's complaint appears to allege, albeit

15  in an unclear fashion, that plaintiff had the right to an "opportunity to be heard" prior to having

16  the Memorandum of Instruction placed in his file.   (E.g., Second Am. Compl. ¶¶ 158-59.)  Yet

17  defendants have not argued that, as a matter of law, these allegations cannot ever support a claim

18  under § 1983 or that a warning letter cannot amount to an "employment action that would

19  implicate due process rights."  (Mot. to Dismiss at 13.)  The complaint's factual allegations

20  involve more than an alleged failure to provide "witness statements," as plaintiff has also alleged

21  a rather strategic implementation of a "zero tolerance" policy that may deny procedural due

22  process rights.  Defendants should be prepared to address these issues if they intend to challenge

23  plaintiffs' claim in the future.[33]

24  _____

25         [33]  Defendants cite to authorities holding that, where state remedies are adequate to protect
    an individual's procedural due process rights, a § 1983 action alleging a violation of those rights will
26  not stand.  (Mot. to Dismiss at 11 (citing Brogan v. San Mateo Cnty., 901 F.2d 762, 764 (9th Cir.

1          4.      *Fourth, Fifth And Sixth Claims For Relief*[34]

2          Defendants argue that plaintiff has failed to exhaust his administrative remedies

3  for his Fourth, Fifth, and Sixth causes of action under California law.  (Mot. to Dismiss at 9.)

4          a.      *Fourth Claim For Relief (Cal. Labor Code § 1102.5) (Second Am. Compl.
                   ¶¶ 161-168) And Fifth Claim For Relief (Cal. Gov. Code § 8547) (Id. ¶¶*
5                  *169-74)*

6          Plaintiff lumps his California Government Code section 8547 claim together with

7  his California Labor Code section 1102.5 claim, and describes both as his "whistleblower

8  retaliation claims."  (Oppo. at 9-10.)  In his Opposition, after lumping the two claims together

9  and construing both as his "Fifth" cause of action, plaintiff states that "[i]n the interest of judicial

10 economy, and Plaintiff's desire to demonstrate his responsibility to both this Court and to the

11 other parties to this action, Plaintiff *concede[s] that his Fifth Cause of Action was a worthy but*

12 *untimely claim[]* for consideration by this Court."  (Oppo. at 9 (emphasis added).)

13         Plaintiff admits that while his "whistleblower retaliation" claims may be

14 "untimely," he originally intended to allege that he "substantially complied" with exhausting his

15 administrative remedies by filing a "written report of his concerns" with his employer.  (Oppo. at

16 10.)  Plaintiff acknowledges that this is a "relatively novel theory" based on the fact that his

17 employer is a "law enforcement agency."  (Id.)  Plaintiff describes, in passing, his now-

18 abandoned, "relatively novel theory:" that plaintiff presented these claims to his employer, a "law

19 enforcement agency," which he believes somehow amounted to "substantial compliance" with

20 ─────────────────────

21 1990).)  However, aside from broadly citing to Skelly v. State Personnel Bd., 15 Cal. 3d 194 (1975),
   defendants do not detail any "state remedies" or describe how their adequacy automatically and
22 necessarily bars plaintiff's due process claim under Section 1983 in this particular action.  While
   defendants may well have an argument under Brogan and Skelly, defendants' motion lacks
23 substantive discussion regarding either case.  Defendants may wish to assert a more developed "state
   remedies" argument in a subsequent motion to dismiss.
24
   [34] The Fourth Claim for Relief is for "California Labor Code § 1102.5" (Second Am. Compl.
25 ¶¶ 161-68); the Fifth Claim for Relief is for "California Whistleblower Protection Act/Cal. Gov.
   Code § 8547" (Id. ¶¶ 169-74); and the Sixth Claim for Relief is for "Negligent Supervision" (Id.  ¶¶
26 175-91).

his administrative exhaustion requirements.  Notwithstanding what appears to be plaintiff's effort to explain his now-abandoned reasoning for filing admittedly "untimely" claims, the undersigned accepts plaintiff's concession that his "Whistleblower Retaliation Claims" are "not critical to the litigation" and are "worthy but untimely" claims.  (Oppo. at 9-10.)  During the hearing, plaintiff admitted to "defective" exhaustion of his claims, the undersigned instructed plaintiff to drop such claims, and plaintiff agreed to do so.

Given plaintiffs' representations in his briefing and during the hearing, the undersigned will not analyze the sufficiency of plaintiff's "whistleblower retaliation claims," and will presume that plaintiff will omit such claims within his amended pleading.  See Fed. R. Civ. P. 11.[35]

### b. _Sixth Claim For Relief (Negligent Supervision)_

Defendants describe authorities providing that the California Government Claims Act requires presentation of a written government claim within six months of the accrual of the cause of action.  (Mot. to Dismiss at 9 (citing Cal. Gov't Code §§ 905, 911.2, 945.4).)

The California's Government Claims Act, which is also known as the California Tort Claims Act,[36] provides that a party seeking to recover money damages from a public entity

---

[35]   Plaintiff is subject to the strictures of Federal Rule of Civil Procedure 11, and hence should carefully plead his claims accordingly.  See Fed. R. Civ. P. 11 (providing that all of plaintiff's claims must be warranted by existing law or a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law, and that plaintiff's factual contentions must have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation).  Rule 11(b) expressly provides that, "[b]y presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney _or unrepresented party_ certifies that to the best of the person's knowledge, information, and belief . . . (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ."  Fed. R. Civ. P. 11(b) (emphasis added).

[36]   In 2007, the California Supreme Court adopted the practice of using the title "Government Claims Act" instead of the more traditional "California Tort Claims Act" to adequately capture the breadth of the statutory framework and to reduce confusion over issues such as whether breach of contract claims fall within the statutory provisions.  See City of Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 & nn.6-7 (2007).

1    or its employees must submit a claim to the entity before filing suit in court, generally no later

2    than six months after the cause of action accrues.[37]  See Cal. Gov't Code §§ 905, 911.2, 945.4,

3    950-950.2.

4              Timely presentation of claims is not merely a procedural requirement but is an

5    element of the plaintiff's cause of action.  Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209

6    (2007) ("Timely claim presentation is not merely a procedural requirement, but is, as this court

7    long ago concluded, a condition precedent to plaintiff's maintaining an action against defendant,

8    and thus an element of the plaintiff's cause of action." (citation and quotation marks omitted)).

9    A plaintiff may sue the public entity and its employees only after the entity has acted upon or is

10   deemed to have rejected the claim.  Id.; see also Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d

11   1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to

12   suit against a public entity, the timely presentation of a written claim and the rejection of the

13   claim in whole or in part.").  A plaintiff's "failure to allege facts demonstrating or excusing

14   compliance with the claims presentation requirement subjects a claim against a public entity" to

15   dismissal for failure to state a claim.[38]  See State v. Superior Court (Bodde), 32 Cal. 4th 1234,

16   1239 (2004).

17             Defendants argue that plaintiff has not alleged having presented any of his state

18   law tort claims in accordance with the Government Tort Claims Act.[39]  (Id. at 9-10.)  Plaintiff

19

20        [37]  A state claim presentment requirements do not apply to *federal* civil rights actions.  Ford
     v. Long Beach Unified Sch. Dist., 461 F.3d 1087, 1089-90 (9th Cir. 2006).

21

22        [38]  The Ninth Circuit Court of Appeals has held that a district court may properly dismiss
     supplemental state law claims for failure to allege compliance or an excuse from compliance with
23   the claims presentation requirement, but errs by failing to instruct a plaintiff regarding the necessity
     of alleging compliance with the exhaustion requirements.  See Karim-Panahi, 839 F.2d at 627.

24        [39]  The claim presentation requirement serves: (1) to give the public entity prompt notice of
     a claim in order to investigate the strengths and weakness of the claim while the evidence is fresh
25   and witnesses are available; (2) to provide an opportunity for "amicable adjustment, thereby avoiding
     expenditure of public funds in needless litigation;" and (3) to inform the public entity of potential
26   liability in preparing its budget.  Spencer v. Merced Cnty. Office of Educ., 59 Cal. App. 4th 1429,

1   responds that he "does not dispute the Defendants['] plain reading of the California Tort Claims

2   Act and its claim presentment requirements." (Oppo. at 10.)  Plaintiff argues, however, that he

3   wishes to allege "equitable estoppel" with respect to the claims presentation requirements for his

4   "Negligent Supervision" claim.  (Oppo. at 10.)  Plaintiff alleges that the "Acting Chief of the

5   Division of Administrative Services" and the "Director of . . . Personnel Programs" ordered the

6   suppression of "evidence" that was "critical to the plaintiff's fulfillment of the condition

7   precedents of the California Tort Claims Act." (Oppo. at 10.)  However, it appears that plaintiff

8   does not offer any other suggestion as to the factual allegations he believes would support a

9   theory of "equitable estoppel" other than this so-called "suppression of evidence."  While

10  plaintiff argues in his Opposition that Don Hayashida "suppressed evidence" necessary for him to

11  file a tort claim, plaintiff never describes this "evidence."  Defendants argue that plaintiff did not

12  need "evidence" to present his claims.  (Mot. to Dismiss at 4.)

13          The filing of a tort claim does not typically require "evidence;" instead,

14  Government Code section 910 requires that a "claim" include: (1) the name and address of the

15  claimant, (2) the address to which notices are to be sent, (3) the date, place and other

16  circumstances of the occurrence or transaction which gave rise to the claim asserted, (4) a general

17  description of the indebtedness, obligation, injury, damage or loss incurred, (5) the name or

18  names of the public employee or employees causing the injury, damage, or loss, and (6) the

19  amount claimed if it totals less than $10,000.  Cal. Gov. Code § 910.

20          To assert a claim of estoppel, a plaintiff must show that the defendant (the party to

21  be estopped) "has by false language or conduct led another to do that which he would not

22  otherwise have done and as a result thereof that he has suffered injury."  State Compensation Ins.

23  Fund v. Workers' Comp. Appeals Bd., (1985) 40 Cal. 3d 5, 16 (1985).  A public entity may be

24  _____

25  1434-35 (1997).  A "public entity" includes "the State, the Regents of the University of California,
    a county, city, district, public authority, public agency, and any other political subdivision or public

26  corporation in the State."  Cal. Gov't Code § 811.2.

1  estopped from asserting the claim limitations period as a bar to suit on a claim where its agents or

2  employees have committed some affirmative act that prevents or deters a claimant from

3  presenting a timely claim.  John R. v. Oakland Unified Sch. Dist., 48 Cal. 3d 438, 445 (1989);

4  Belinda K. v. Cnty. of Alameda, No. 10–CV–05797–LHK, 2011 WL 2690356, at *12-13 (N.D.

5  Cal. July 8, 2011) (unpublished) (citing cases, including John R, and dismissing plaintiff's state

6  law tort claim but permitting leave to amend to allege facts supporting estoppel through an

7  "affirmative act" by defendants).  Estoppel commonly results from misleading statements about

8  the need for or the advisability of a claim.  John R., 48 Cal. 3d at 445.

9          While the undersigned does not make any determination with respect to plaintiff's

10  "estoppel" theory, plaintiff should closely examine defendants' argument and the authorities

11  cited above prior to continuing to advance the theory.

12  IV.    CONCLUSION

13          For the reasons stated above, IT IS HEREBY ORDERED that:

14          1.    Defendants' motions to dismiss (Mot. to Dismiss, Dkt. No. 21-1) is

15  granted pursuant to Federal Rule of Civil Procedure 8(a) and (d).  Plaintiff's Second Amended

16  Complaint (Dkt. No. 12) is dismissed without prejudice, and plaintiff is granted leave to file a

17  Third Amended Complaint that conforms to the requirements of this order, the Federal Rules of

18  Civil Procedure, and the court's Local Rules.  Plaintiff's Third Amended Complaint shall clearly

19  link specific defendants with specific allegations and claims for relief.  Plaintiff shall amend each

20  of his claims for relief such that, immediately below the heading for each claim, plaintiff lists the

21  name(s) of each defendant against whom each given claim is directed.  Plaintiff shall amend

22  every claim for relief such that each is made as against one or more defendants specifically

23  identified by name.  Plaintiff's amended pleading should clearly notify each defendant of the

24  factual allegations involving him or her, as well as clearly notify each defendant which claim(s)

25  are directed at him or her.  Further, if plaintiff intended to name certain individuals as mere

26  witnesses to incidents involving him, plaintiff should not refer to these individuals as

44

1    "defendants."  Plaintiff shall not name individuals as defendants unless he presently has a good

2    faith basis for believing they should be so named — and plaintiff's belief that future discovery

3    *might* reveal a basis for naming a given individual as a defendant will not suffice.  Plaintiff shall

4    also limit his allegations only to those non-conclusory allegations that are relevant to his claims.

5            2.      Within 30 days of the date of entry of this order, plaintiff shall file an

6    amended complaint that is complete in itself.  The amended complaint must bear the docket

7    number assigned to this case and must be entitled "Third Amended Complaint."  Plaintiff must

8    file an original and one copy of the Third Amended Complaint.  Failure to timely file a Third

9    Amended Complaint in accordance with this order may result in a recommendation that this

10   action be dismissed.  Additionally, plaintiff is informed that the court cannot refer to prior

11   pleadings in order to make an amended complaint complete.  Eastern District Local Rule 220

12   requires that an amended complaint be complete in itself.  This requirement is because, as a

13   general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375

14   F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being

15   treated thereafter as non-existent.").  Accordingly, once plaintiff files an amended complaint,

16   previously-filed versions of the complaint no longer serve any function in the case.

17           3.      During the hearing, the undersigned spent significant time discussing with

18   plaintiff the various deficiencies in his pleading and how to correct them.  The undersigned also

19   explained that plaintiff may not receive additional chances to amend his pleading following his

20   Third Amended Complaint.  If plaintiff fails to amend his pleading as ordered, plaintiff may be

21   subject to sanctions, and such sanctions may include the dismissal of plaintiff's case.  Eastern

22   District Local Rule 183, governing persons appearing without counsel, provides that failure to

23   comply with the Federal Rules of Civil Procedure and Local Rules may be ground for dismissal,

24   judgment by default, or other appropriate sanction.  Local Rule 110 provides that failure to

25   comply with the Local Rules "may be grounds for imposition by the Court of any and all

26   sanctions authorized by statute or Rule or within the inherent power of the Court."  See also

1   Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995).  Pro se litigants are bound by the rules of

2   procedure, even though pleadings are liberally construed in their favor.  King v. Atiyeh, 814 F.2d

3   565, 567 (9th Cir. 1987).

4          4.     Plaintiff's "Motion for Consideration of Additional Material" (Dkt. No.

5   22) is construed as a request for judicial notice and denied, as the materials are not judicially

6   noticeable.  The undersigned also denies plaintiff's request to have the motion to dismiss

7   construed as a motion for summary judgment to enable the court to consider plaintiff's polygraph

8   test results, as such results are not relevant to the sufficiency of plaintiff's pleading.

9          5.     While the undersigned resolves the pending motion to dismiss pursuant to

10  Rule 8, the remainder of this order explains certain issues plaintiff will likely need to address in

11  continuing to allege some or all of his claims in an amended pleading, as well as some issues

12  defendants will likely need to address should they continue to challenge plaintiffs' claims.  While

13  the undersigned does not make any determinations at this time regarding the sufficiency of

14  plaintiff's pleading under Federal Rule of Civil Procedure 12(b)(6), the undersigned has flagged

15  certain issues for both parties to address going forward, and the parties are expected to closely

16  review this order as the pleading stage proceeds.  For instance, as discussed above, should

17  plaintiff wish to continue to pursue Section 1983 claims, plaintiff's pleading should clearly

18  identify: (1) what specific constitutional right or rights plaintiff claims he was denied, (2) when

19  and how such denial(s) occurred, (3) which specific defendants personally participated in such

20  denial(s), and how each individual defendant participated, (4) what "employment action" (or

21  actions) plaintiff believes gave rise to his right to an opportunity to be heard, (5) how plaintiff

22  was denied an opportunity to be heard, (6) how plaintiff believes his job was restricted as a result

23  of the denial of an opportunity to be heard, and (7) whether plaintiff alleges denials of

24  constitutional rights other than the right to an opportunity to be heard.  Again, prior to crafting

25  his amended pleading, plaintiff should take care to review every section of this order (including

26  those not specifically reiterated in this Conclusion) and should attempt to resolve the issues

1   raised herein prior to filing his amended pleading.

2       6.      With respect to plaintiff's claim under "18 U.S.C. § 242," which is a

3   criminal statute that does not provide a basis for civil liability, plaintiff should review his claim

4   and omit it from future pleadings if he no longer believes it to be proper.

5       7.      With respect to plaintiff's  "whistleblower retaliation claims," plaintiff has

6   conceded that his "Whistleblower Retaliation Claims" are "not critical to the litigation" and are

7   "worthy but untimely" claims, (Oppo. at 9-10); therefore, the undersigned presumes that plaintiff

8   will not include such claims within his amended pleading.

9       8.      For the reasons explained on the record during the conference, all parties

10  must file completed "Consent to / Decline of Jurisdiction of US Magistrate Judge" forms within

11  30 days of the entry of this order.  These forms can be obtained from the Clerk's Office or,

12  alternatively, can be printed from the court's electronic docket in this case at Docket Number

13  4-1.

14          IT IS SO ORDERED.

15  DATED: April 24, 2012

16

17                                        _____

18                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26