```
 1
 2
 3
 4
 5
 6
 7
 8                    IN THE UNITED STATES DISTRICT COURT
 9                  FOR THE EASTERN DISTRICT OF CALIFORNIA
10   JOHN L. HARRIS III,
11              Plaintiff,                No. 2:11-cv-2186 KJN PS
12        v.
     KAMALA HARRIS, Attorney General of
13   the State of California, as in her official
     capacity, et al.,
14
                Defendants.              ORDER
15   _____/
16              Currently pending before the undersigned is defendants' Motion to Dismiss the
17   Third Amended Complaint.¹  (Mot. to Dismiss, Dkt. No. 43.)  Plaintiff John L. Harris III
18   ("plaintiff"), proceeding without counsel in this action, timely filed an opposition brief
19   ("Opposition").²  (Opp'n, Dkt. No. 45.)  Defendants filed a reply brief ("Reply") in support of
20   their motion to dismiss.  (Reply, Dkt. No. 47.)
21   ////
22   ──────────────────
23        ¹ Plaintiff's Third Amended Complaint names Kamala Harris, Attorney General of the State
     of California in her Official Capacity, and Don Hayashida, John Jang, and John Swift, each in their
     individual and official capacities.  (Third Am. Compl., Dkt. No. 40 at 1.)
24
25        ² Originally, this action was referred to the undersigned pursuant to Eastern District Local
     Rule 302(c)(21).  (Dkt. No. 4.)  This action has since been referred to the undersigned for all
26   purposes, including trial, pursuant to the consent of all appearing parties and an order dated May 25,
     2012.  (Dkt. No. 38.)  See 28 U.S.C. § 636(c); Local Rule 301.
```

1

The court took this matter under submission on the briefs and without oral argument. The undersigned has considered the briefs and the appropriate portions of the record in this case and, for the reasons stated below, partially grants and partially denies defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). Plaintiff's third amended pleading fails to state claims for deprivation of due process rights, conspiracy to violate plaintiff's rights, and breach of fiduciary duty. Those claims are dismissed with prejudice for the reasons stated below. Plaintiff also fails to plausibly allege a First Amendment retaliation claim, but the undersigned dismisses that claim without prejudice and gives plaintiff a final opportunity to amend a portion of that one claim.

I.    BACKGROUND

A.    Procedural History

Plaintiff filed his original complaint on August 17, 2011. (Dkt. No. 1.) Thereafter, plaintiff filed various iterations of his pleading. (Dkt. Nos. 5 (First Am. Compl.); 7 (Second Am. Compl.); 12 (a different "Second" Am. Compl.).)

Defendants previously moved to dismiss plaintiff's Second Amended Complaint. (Second Am. Compl., Dkt. No. 12.) On April 25, 2012, the undersigned granted defendants' motion (Dkt. No. 21) pursuant to Federal Rule of Civil Procedure 8(a) and gave plaintiff leave to amend his pleading. (Order issued April 25, 2012, Dkt. No. 35.) The undersigned's order informed the plaintiff that his amended pleading should clearly link specific defendants with specific allegations and claims for relief, include only non-conclusory allegations that are relevant to his claims, and include facts sufficient to support each element of his claims. (Id. at 44-47.)

Plaintiff timely filed a Third Amended Complaint. (Third Am. Compl., Dkt. No. 40.) On June 22, 2012, defendants moved to dismiss plaintiff's Third Amended Complaint. (Mot. to Dismiss, Dkt. No. 43.) This order resolves the motion.

////

## B.    The Allegations In The Third Amended Complaint

The undersigned has previously spent a significant amount of time attempting to distill factual allegations and claims from plaintiff's muddled pleadings (See Order dated April 25, 2012, Dkt. No. 35 at 3-11), and given the meandering style of plaintiff's most recent pleading, declines to engage in that time-consuming process yet again.[3]  Suffice it to say that plaintiff's Third Amended Complaint (the "TAC") only partially clarifies the factual bases for plaintiff's claims and partially clarifies the legal claims plaintiff intends to assert.  The TAC now frames four claims for relief: (1) "Violation of Right to Free Speech;" (2) "42 U.S.C. § 1983 (Conspiracy);" (3) "Violation of [] Fourteenth Amendment Due Process;" (4) "Breach of Fiduciary Duty."  (See generally Third Am. Compl.)  The TAC seeks damages, injunctive relief, and declaratory relief.  (Id. at 19-21.)  These claims arise from a dispute between plaintiff, a public employee in the position of an "Associate Governmental Program Analyst in the Personnel Programs[] Risk Management Unit," and his employer, the California Department of Justice.  (Id. ¶¶ 2, 4, 12.)

In summary, plaintiff alleges that his supervisors placed a "Memorandum of Instruction" (hereinafter the "Warning Letter") in his personnel file after they received complaints that plaintiff made inappropriate sexual statements to a co-worker on several occasions, including an "off-duty street corner conversation" about smoking and nicotine addiction.  (Id. ¶¶ 36-42, 47-60.)  Plaintiff alleges that the Warning Letter — as well as a meeting held to discuss it and a performance appraisal mentioning it — constitute adverse employment actions that impinged upon plaintiff's property interest in his continued employment.  (Id. ¶¶ 33

---

[3]  See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (affirming district court's dismissal of the complaint for violation of Rule 8 and failure to comply with court orders, because with "prolix" pleadings, "[t]he judge wastes half a day in chambers preparing the 'short and plain statement' which Rule 8 obligated plaintiffs to submit.  He then must manage the litigation without knowing what claims are made against whom.  This leads to discovery disputes and lengthy trials, prejudicing litigants in other case who follow the rules, as well as defendants in the case in which the prolix pleading is filed.")

(alleging a property interest in plaintiff's employment), 43-67 (alleging the warning meeting and the Warning Letter), 79-80 and 91 (alleging a performance appraisal that included the contents of the Warning Letter).)

Plaintiff alleges that he was subject to retaliation for speech in the form of an email to his supervisor, wherein plaintiff expressed disagreement with his supervisor's approach regarding an investigation of another employee who was believed to have damaged employer property. (Id. ¶¶ 81-90.) Plaintiff had allegedly been participating in the investigation. (Id.) The alleged retaliation took the form of a supervisor's verbal "reprimand" of plaintiff and the inclusion of the reprimand in plaintiff's performance evaluation. (Id. ¶ 87-88, 91.)

Plaintiff also alleges that his procedural due process rights were violated because, before the Warning Letter was placed in his file, plaintiff was not given an opportunity for a hearing and/or opportunity to review the witness statements that prompted the warning. (Id. ¶¶ 22, 61.) Plaintiff alleges that his supervisors chose to frame the personnel matter as subject to his employer's "zero tolerance" policy in order to avoid having to provide plaintiff with witness statements and/or an opportunity to be heard before issuing the Warning Letter. (Id. ¶¶ 2-4.)

II. LEGAL STANDARDS

A. Federal Rule of Civil Procedure 8

Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a complaint must provide, in part, a "short and plain statement" of claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, 556 U.S. 662, 677-81(2009); Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053 (2010). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."

Id. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678-79. Similarly, Rule 8(d) requires a pleading to be "concise and direct," and made up of "simple, concise and direct" allegations. Fed. R. Civ. P. 8(d).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Federal pleading standards require the presentation of factual allegations sufficient to state a plausible claim for relief as to each defendant. Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of civil rights"). A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The mere possibility of misconduct falls short of meeting this plausibility standard. Twombly, 550 U.S. at 545. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555) (citations and internal quotations omitted).

A complaint should be dismissed for failure to state a claim if, taking all well-pleaded factual allegations as true, it does not contain "'enough facts to state a claim to relief that is plausible on its face.'" See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Iqbal, 556 U.S. at 678-79.) "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 556 U.S. at 678-79). The court accepts all of

the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and provide an opportunity to cure those deficiencies if it appears at all possible that the plaintiff can do so. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under Iqbal).

////

////

III.  DISCUSSION

  A. <u>Defendants Have Not Shown That Kamala Harris Is Presently Subject To Dismissal</u>

  As in their previous motion to dismiss, defendants again argue that defendant Kamala Harris should be dismissed because she is not alleged to have personally participated in any alleged wrongdoing.  (Mot. to Dismiss at 2.)  While defendants are correct that the law does not recognize a theory of supervisory liability for civil rights violations, defendants have not shown grounds for Kamala Harris' dismissal for the same reasons described in the undersigned's prior order addressing this issue.  (Order, Dkt. No. 35 at 27-29.)  Plaintiff's pleading seeks both declaratory and injunctive relief.  (Third Am. Compl. at 20.)  Defendants' pending motion does not address the authorities cited in the undersigned's prior order with respect to this issue. (Order, Dkt. No. 35 at 27-29.)  Accordingly, defendants' argument is not well-taken, and the undersigned will not dismiss defendant Kamala Harris at this time.

  B. <u>Defendants Have Not Shown That The Third Amended Complaint Is Generally Subject To Dismissal Pursuant To Federal Rule 8</u>

  Defendants argue that the TAC is confusing, ambiguous, conclusory and rife with irrelevant allegations. (Mot. to Dismiss at 2-6.)  While defendants correctly note that the TAC contains some new and vague allegations (i.e., ¶¶ 26-31), these allegations alone do not warrant dismissal.  While Rule 8(a) requires a "short and plain" statement of the claims showing entitlement to relief, it does not require that *all* arguably extraneous allegations be removed for a pleading to be deemed sufficient.  Here, while plaintiff's inclusion of certain "irrelevant" allegations within his pleading is not itself sufficient to warrant dismissal of the pleading, the undersigned cautions plaintiff that the inclusion of paragraphs 26 through 31 and similarly tangential allegations does not facilitate a "short and plain" statement of plaintiff's claims.

  Defendants also argue that the allegations supporting plaintiff's First Amendment claim are prohibitively conclusory and run afoul of Rule 8.  (Mot. to Dismiss at 4-5 ("no

defendant is alleged to have authored" the Warning Letter).) While defendants take issue with plaintiff's alleging that defendants passively "allowed" the Warning Letter to be placed in his file, the TAC at least tacitly alleges that supervisors Swift and Jang actively participated in crafting the Warning Letter. (E.g., Third Am. Compl. at 17). Defendants also argue that the First Amendment claim lacks supporting factual allegations, but this is an argument better framed as under Federal Rule 12(b)(6) (id. ("[p]laintiff describes no facts suggesting an actual connection between his free speech and the alleged adverse action")) and the argument is thus further addressed elsewhere within this order.

Defendants also argue that the TAC fails to give defendants notice of the alleged factual basis of plaintiff's due process claim. (Mot. to Dismiss. at 5-6.) However, defendants' moving papers list six alleged denials of due process: (1) giving plaintiff the Warning Letter; (2) not providing plaintiff witness statements in connection with sexual harassment complaints following his statements regarding smoking/addiction; (3) failing to investigate those complaints; (4) invoking a "zero tolerance" policy instead of a disciplinary mechanism that would have afforded plaintiff more process; (5) including the Warning Letter in plaintiff's performance review; and (6) including a supervisor's criticism of plaintiff's email in his performance evaluation. (Id.) While plaintiffs' pleading could be clearer, reference to these six events does not itself render the TAC fatally vague. After all, defendants were able to ascertain these alleged factual bases for plaintiff's due process claims and could thus presumably craft discovery requests thereon and prepare defense(s) thereto.

C.     First Amendment Retaliation

In order to sustain a Section 1983 claim of retaliation in violation of the First Amendment, plaintiff must allege that he suffered an adverse employment action. See Huskey v. City of San Jose, 204 F.3d 893, 899-900 (9th Cir. 2000). If the facts alleged support a finding that plaintiff suffered an adverse employment action, plaintiff then must demonstrate that: (1) the speech at issue was constitutionally protected, and (2) that the speech was a substantial

8

motivating factor in the adverse employment action.  Id.  Because defendants have not compellingly argued otherwise, however, the undersigned assumes that plaintiff has sufficiently alleged having suffered an "adverse employment action" given his allegation of receiving the Warning Letter.  See id.  Accordingly, the undersigned will proceed to analyze whether the content of plaintiff's alleged speech was protected, and whether plaintiff has alleged facts plausibly suggesting such protected speech was a substantial motivating factor in his alleged treatment.

As described in the undersigned's prior order (Order, Dkt. No. 35), the Ninth Circuit Court of Appeals uses "a sequential five-step series of questions" in evaluating the speech component of a First Amendment retaliation claim.  Gibson v. Office of Atty. Gen., State of Cal., 561 F.3d 920, 925 (9th Cir. 2009) (citing Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009)).  Those questions are as follows: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech."  Id.; accord Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1068-69 (9th Cir. 2012).  Because these are sequential steps, a plaintiff's failure to satisfy any one of the steps ends the inquiry.  Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 961-62 (9th Cir. 2011).

The "public concern inquiry is purely a question of law."  Gibson, 561 F.3d at 925; Desrochers v. City of San Bernardino, 572 F.3d 703, 709 (9th Cir. 2009) (quoting Eng, 552 F.3d at 1070 and citing Connick v. Meyers, 461 U.S. 138, 147 (1983)).  Determining whether the speech at issue touched on a matter of public concern is properly decided on a motion to dismiss.  E.g., Gibson, 561 F.3d at 925 (affirming district court's dismissal of First Amendment retaliation claim under Federal Rule 12(b)(6) on grounds speech did not address a public concern).  District

courts within this circuit have dismissed First Amendment retaliation claims at the pleading stage. E.g., Handte v. Miller, No. 3:10–CV–00111–LRH, 2010 WL 4703748, at *7-8 (D. Nev. Nov. 12, 2010) (unpublished) (dismissing First Amendment retaliation claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)). Accordingly, accepting a plaintiff's speech as he has alleged it, the court can proceed to determine whether such speech amounted to a "public concern" as a matter of law.

The Ninth Circuit Court of Appeals generally affords a liberal construction of "public concern." Roe, 109 F.3d at 586. Speech involves a matter of public concern when it can fairly be considered to relate to "any matter of political, social, or other concern to the community." Eng, 552 F.3d at 1070 (quoting Johnson v. Multnomah County, Or., 48 F.3d 420, 422 (9th Cir. 1995)). "[T]he state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" Id. (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

However, the State "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Gibson, 561 F.3d at 926 (citing Pickering, 391 U.S. at 568). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147-48. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Gibson, 561 F.3d at 925 (citing Connick, 461 U.S. at 146). Speech by public employees "may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would

be of no relevance to the public's evaluation of the performance of governmental agencies." Gibson, 561 F.3d at 925 (citing McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)). Generally, when a public employee complains about his own job treatment, his speech does not address a matter of public concern. Thomas v. City of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004) ("[T]he type of personnel matters that we have deemed unprotected under the public concern test are employment grievances in which the employee is complaining about her *own* job treatment, not personnel matters pertaining to others." (emphasis in original)); see also Robinson v. York, 566 F.3d 817, 823 (9th Cir. 2009)).

"Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (some internal quotations and alterations omitted)). "In evaluating whether a plaintiff spoke as a private citizen, we must therefore assume the truth of the facts as alleged by the plaintiff with respect to employment responsibilities." Eng, 552 F.3d at 1071.

Here, plaintiff premises his First Amendment retaliation claim on two separate and dissimilar instances of alleged speech. The first instance is plaintiff's email to his supervisor; the second instance is plaintiff's casual conversation with coworkers. The undersigned addresses both instances separately below.

### 1. *Plaintiff's Alleged Email To His Supervisor Did Not Touch On A Matter Of Public Concern*

Plaintiff alleges that he suffered retaliation after sending an after-hours email to his supervisor via a personal email account. (Third Am. Compl. ¶¶ 81-90.) According to the TAC, as an analyst in the Personnel Program's Risk Management Unit, plaintiff participated in his employer's investigation of a property damage claim involving another employee. (Id. ¶¶ 12, 81-90.) Plaintiff alleges he was tasked with a minor component of the investigation akin to data

entry.  (Id. ¶ 86.)  However, after allegedly reviewing a video of the employee in question and examining "photographic evidence" of the damaged property, plaintiff believed there was insufficient evidence to support a property damage claim against the employee.  Plaintiff allegedly emailed his views to his supervisor.  (Id. ¶¶ 82, 84, 85.)  Specifically, plaintiff alleges that

> Plaintiff, off duty and using his personal email account, sent the following message to his direct supervisor Artie Cooper: Hi Artie: Was there any evidence that the employee damaged the property?  I know we are accusing her of damaging the property and paid for a replacement plastic cover, but the video did not show conclusively that she damaged the property.  It does not feel right for us to make such an accusation unless there's some additional evidence that is more compelling.

(Id. ¶¶ 81-84.)  Plaintiff alleges his email was intended to express plaintiff's concerns that the employee was facing a "possible injustice."  (Id. ¶¶ 84-85.)  Defendants argue that plaintiff's email to his supervisor was a confidential, "internal administrative matter" that did not express an issue of public concern as a matter of law.  (Mot. to Dismiss at 10-11.)

        a.    *Content*

Courts look first to the "content" of speech to determine whether it addresses a matter of public concern.  Johnson, 658 F.3d at 965; Desrochers, 572 F.3d at 710.  Again, the Ninth Circuit Court of Appeals generally affords a liberal construction of "public concern."  Roe, 109 F.3d at 586.  Speech involves a matter of public concern when it can fairly be considered to relate to "any matter of political, social, or other concern to the community."  Eng, 552 F.3d at 1070 (quoting Johnson v. Multnomah County, Or., 48 F.3d 420, 422 (9th Cir. 1995)).  "[T]he state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'"  Id. (quoting Pickering, 391 U.S. at 568).  The First Amendment does not "render[] actionable every job-related conversation between government employees."  Weeks v. Bayer, 246 F.3d 1231, 1235-36 (9th Cir. 2001) (holding that employee's statement to a co-worker regarding a potential for losing

12

funding due to a supervisor's delay was akin to "water cooler conversation" and did not touch on a matter of public concern).

In Desrochers, two police officers filed grievances describing dissatisfaction about their supervisors' allegedly bullying conduct toward them. Desrochers, 572 F.3d at 705, 713. The plaintiffs alleged that, after they lodged their grievances, they suffered retaliatory employment actions in the form of a demotion and suspension. Id. at 705. The plaintiffs alleged their grievances constituted speech on matters of public concern in that their supervisor's "autocratic" leadership style negatively impacted the police department and pertained to officer morale, operational efficiency, and potential misconduct by police officials. Id. at 707, 710. In rejecting that argument, the Court of Appeals clarified that the content of protected speech "must involve 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." Id. at 710 (quoting McKinley, 705 F.2d at 1114). The court held that an individual's personnel dispute that "would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" Id. (quoting Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). The court further clarified that "a simple reference to government functioning" does not automatically qualify a communication as containing a matter of public concern. Id. at 711. Instead, the focus of the public concern analysis "must be upon whether the public or community is likely to be *truly interested* in the particular expression, or whether it is more properly viewed as essentially a private grievance." Desrochers, 572 F.3d at 713 (quoting Roe v. City and Cnty of San Francisco, 109 F.3d 578, 585 (9th Cir. 1997) (emphasis in Desrochers). The Court of Appeals determined that the public would not be "truly interested" that two police sergeants believed their supervisor to be a "micromanager," "autocratic" and "controlling."[4] Id.

---

[4] The Court of Appeals found that the "plain language" of the grievances did not directly address police competence, and instead indicated that the plaintiffs were involved in a personnel dispute and "largely devoid of reference to matters we have deemed to be of public concern." Id.

"Such speech, 'if released to the public, would convey no information at all other than the fact that [two] employee[s were] upset with the status quo" and is of "no relevance 'beyond the employee[s]' bureaucratic niche.'" Id. (quoting Connick, 461 U.S. at 148; Tucker v. State of Cal. Dept. of Educ., 97 F.3d 1204, 1210 (9th Cir. 1996)). The Court of Appeals concluded that the content of the grievances "relate[d] at best only tangentially to matters of public concern" and affirmed the grant of summary judgment in favor of defendants with respect to the First Amendment retaliation claim. Id. at 714.

Here, plaintiff has alleged that he emailed his supervisor regarding the sufficiency of evidence against a California Department of Justice employee being investigated for property damage. (Third Am. Compl. ¶¶ 81-87.) Plaintiff's speech can therefore be characterized as speech about the personnel matters of another employee. While a coworker's speech regarding another coworker can touch on a matter of public concern, see Robinson, 566 F.3d at 823, however, in this particular case plaintiff's speech does not do so. See Karl, 678 F.3d at 1069-71; Brownfield v. City of Yakima, 612 F.3d 1140, 1147-48 (9th Cir. 2010).

Here, plaintiff's email did not involve a social, political, or other concern to the community, see Eng, 552 F.3d at 1070; it amounted to one employee's disagreement with the results of one property damage investigation. Plaintiff's email is fairly analogous to the speech in Desrochers. See Desrochers, 572 F.2d at 715-16. Both communications were narrow in scope: in Desrochers, the grievance pertained to one supervisor; in the instant case, the email pertained to one investigation of one employee. See id. The fact that plaintiff believed there was insufficient evidence in an investigation regarding one employee's property damage is not information "needed or appropriate to enable the members of society to make informed decisions about the operation of their government." See McKinley, 705 F.2d at 1114; see also Weeks, 246 F.3d at 1235-36 (holding that "a single private conversation about the funding status of a

at 712. The court looks "to what the employees actually said, not what they say they said after the fact." Id. at 711.

14

program" was mere "water cooler conversation" and did not touch on a matter of public concern). The public is not likely to be "truly interested in" whether plaintiff thinks that, as to one investigation of one employee, there was insufficient evidence to warrant disciplining that employee. Desrochers, 572 F.3d at 710. Such speech is of "no relevance to the public's evaluation of the performance of governmental agencies." Id. Plaintiff's opinion on the investigation is more appropriately viewed as a private grievance. See id. at 713. If the speech in Desrochers — which potentially implicated the management of an entire police department — did not address a public concern, then plaintiff's questioning the sufficiency of evidence of property damage in one investigation of one employee does not address a public concern. See id. at 710-13.

The undersigned notes that plaintiff's amended pleading includes commentary that appears to be plaintiff's effort to frame his email as more broadly relevant to the public. (Third Am. Compl. ¶ 86 ("The questioned conduct also could expose members of the public, who frequent the location, to the same unfair treatment.").) However, plaintiff's conclusory commentary notwithstanding, the alleged content of the email does not itself touch on a matter of public concern. (Id. ¶¶ 85-90.) Plaintiff's "post hoc characterizations" of his speech are irrelevant, because courts conducting the "public concern" test "look to what the employees actually said, not what they say they said after the fact." Desrochers, 572 F.3d at 711-12 (citing Roe, 109 F.3d at 585).[5]

Plaintiff's email is also fairly analogous to the speech in Brownfield, where the speech at issue was plaintiff's internal complaints that his co-worker was incompetent and unfairly given choice assignments from a "too friendly" supervisor. See Brownfield, 612 F.3d at

---

[5] In Desrochers, the speech at issue focused only on the conduct of one supervisor, not on widespread departmental issues or on multiple supervisors. Desrochers, 572 F.3d at 711-12. The court noted that speech "not otherwise of public concern does not attain that status because its subject matter could, *in different circumstances*, have been the topic of a communication to the public that might be of general interest." Id. (quoting Connick, 461 U.S. at 148 n.8. (emphasis in Desrochers).)

1147-48. The court in Brownfield held that such speech was the "stuff of internal power

struggles within the workplace" and was "no interest beyond the employee's bureaucratic niche."

Id. (quoting Desrochers, 572 F.3d at 710) (internal quotation marks omitted). A "simple

reference to government functioning" does not automatically qualify as speech on a matter of

public concern, and here plaintiff's email — explaining plaintiff's disagreement with the

outcome of one investigation of one California Department of Justice employee — falls directly

into this category. See Brownfield, 612 F.3d at 1147-48. Plaintiff's informing his supervisor in

the Personnel Programs Risk Management Unit that he believed there was insufficient evidence

that an employee damaged property is not of "broader societal concern," see id.; the email simply

expressed plaintiff's disagreement with the results of one of his Unit's investigations. Cf.

Gilbrook v. City of Westminster, 177 F.3d 839, 866 (9th Cir. 1999) (statements calling into

question a "fire department's ability to respond effectively to life-threatening emergencies"

addressed a matter of public concern); Hyland v. Wonder, 972 F.2d 1129, 1138 (9th Cir. 1992)

(communications were public rather than personal in part because they "did not concern

[plaintiff's] dissatisfaction with his own position or on-the-job treatment"); Gillette, 886 F.2d at

1196, 1198 (fireman's complaints regarding police use of excessive force addressed a matter of

public concern). The "focus must be upon whether the public or community is likely to be truly

interested in the particular expression, or whether it is more properly viewed as essentially a

private grievance." See Brownfield, 612 F.2d at 1148 (quoting Roe, 109 F.3d at 585).

Accordingly, as in Brownfield, nothing in plaintiff's alleged emailed statements "would be of

even modest relevance to the public in evaluating the functioning of" the California Department

of Justice. See id.

////

////

////

////

16

b.    *Form and Context*[6]

While an employee's having "expressed his views inside his office, rather than publicly, is not dispositive," a "limited audience weigh[s] against [a] claim of protected speech." Desrochers, 572 F.3d at 714 (citing Garcetti v. Ceballos, 547 U.S. 410, 420; Roe 109 F.3d at 585, McKinley, 705 F.2d at 1114.) In Desrochers,"[b]ecause the speech at issue took the form of internal employee grievances which were not disseminated to the public," the Court of Appeals held that this "cut against a finding of public concern." Id. at 715. As to context, "[i]n a close case . . . the fact that [the speech] was made because of grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." Desrochers, 572 F.3d at 710 (quotation omitted); see also Gilbrook, 177 F.3d at 866 ("An employee's motivation and the audience chosen for the speech also are relevant to the public-concern inquiry.").

Here, with respect to the form and context of plaintiff's speech, the email was purely internal. As in Brownfield, plaintiff has allegedly complained "only to his superiors" and not to the press or public at large. See Brownfield, 612 F.3d at 1149; cf. Gilbrook, 117 F.3d at 866 (plaintiff made statements to the press); Allen v. Scribner, 812 F.2d 426, 431 (9th Cir. 1987) (communications made to public); McKinley, 705 F.2d at 1115 ("[P]laintiff's speech was specifically and purposefully directed to the public . . . ."). Plaintiff does not allege having engaged in this speech in any context outside the internal-grievance rule of Desrochers, e.g., trial testimony or a letter to a newspaper or legislator. Desrochers, 572 F.3d at 714-15. While not dispositive, this weighs in favor of unprotected speech. Id.

////

---

[6] Of the three concerns, "content is king." Johnson, 658 F.3d at 965 (finding protected speech in the "content" analysis and declining to reach the "form" and "context" elements of Connick) (citing Desrochers, 572 F.3d at 710). It is "the greatest single factor in the Connick inquiry," and our primary concern. Id. (citing cases). Form and context only truly inform our legal inquiry in those "close" cases where "the subject matter of a statement is only marginally related to issues of public concern." Id. (citing Desrochers, 572 F.3d at 710 and Johnson, 48 F.3d at 425).

17

Accordingly, plaintiff's alleged email did not address matters of public concern, the speech was not protected, and the speech cannot give rise to a claim for First Amendment retaliation.

2. *Defendants Have Not Shown That Plaintiff's Off-Duty Statements To His Co-Workers Failed To Touch On Matters Of Public Concern*

In his Opposition, plaintiff confirms his allegation that he was disciplined for having casual off-duty conversations with coworkers about broad topics like smoking, addiction, and Freud. (Opp'n at 3; Third Am. Compl. ¶¶ 53-59.) Indeed, plaintiff alleges that he

> began a discussion of the impact of nicotine addiction on society, drawing from his personal experience, and academic study, including Sigmund Freud's theory of psychosexual development, which suggests that child development includes an 'oral stage', which occurs from birth to about year one, when the libido is focused on the mouth . . . .
>
> The [p]laintiff offered a summary of how prominent child developmental theories are being tested in current research, including, the variances in the addictive power of cigarette smoking within the adult population, and shared the conclusion of a psychologist, who proposed that being fixated at the oral stage of psychosexual development may result in an excessive use of oral stimulation, such as cigarettes, drinking or eating.

(Third Am. Compl. ¶¶ 40-41.) Plaintiff further alleges that his supervisors "substituted" some "offensive interrogatories" in place of the above-described speech when warning plaintiff about his conduct. (Id. ¶¶ 64-66.) Specifically, plaintiff alleges that his supervisors reprimanded and warned him for saying things plaintiff claims he did not say, such as asking female coworker Kimberly Bell the following questions:

> (1) Do you have an oral fixation?
> (2) Did you suck your thumb as a child
> (3) [Were] you ripped off the breast when you were younger[?]
> (4) Do you have bad teeth[?]
> (5) Have you ever sucked on one of those rubber things[?]

(Id. ¶ 64.)  Plaintiff alleges he never made these comments.  (Id.)  Plaintiff also alleges that he made a "call me" sign and stated that he did not have a "rock in his pocket" in response to comments by coworker Kimberly Bell.  (Id. ¶¶ 57-59.)  At this procedural posture, the undersigned must take plaintiff's allegations as true.  E.g. Corrie, 503 F.3d at 977.

The undersigned notes that plaintiff alleges that his statements were not made in connection with his role as a public employee (Third Am. Compl. ¶ 5 (alleging plaintiff was "off-duty" and "speaking on matters of which have no connection to plaintiff's actual employment responsibilities")) and the undersigned thus treats the alleged speech as that of a private citizen.  "In evaluating whether a plaintiff spoke as a private citizen, we must therefore assume the truth of the facts as alleged by the plaintiff with respect to employment responsibilities."  Eng, 552 F.3d at 1071.

Again, the Ninth Circuit Court of Appeals generally affords a liberal construction of "public concern."  Roe, 109 F.3d at 586.  Speech involves a matter of public concern when it can fairly be considered to relate to "any matter of political, social, or other concern to the community."  Eng, 552 F.3d at 1070 (quoting Johnson, 48 F.3d at 422).  "[T]he state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'"  Id. (quoting Pickering, 391 U.S. at 568).

Defendants have not identified any authorities suggesting that nicotine addiction issues do not fit within the category of "any matter of political, social, or other concern" to the community.  See Eng, 552 F.3d at 1070.  Plaintiff alleges that he engaged in a "discussion of the impact of nicotine addiction on society" and a "discussion of the sale of cigarettes to minors, the development of nicotine addiction, and the costs to society from the diseases attributable to long term tobacco use."  (Third Am. Compl. ¶¶ 40-42.)  Courts have held that a public employee's speech on broad social topics amounts to speech on matters of public concern.  See e.g., Rankin v. McPherson, 483 U.S. 378, 386-87 (1987) (where a county secretary told coworkers that she

hoped the president would be assassinated, the U.S. Supreme Court reversed the lower court and held that "[t]he statement was made in the course of a conversation addressing the policies of the President's administration" and therefore "plainly dealt with a matter of public concern.")

Plaintiff's alleged statements to his coworkers about nicotine and addiction did not take the form of an internal grievance regarding, for instance, plaintiff's disagreement with the results of a work-related investigation. Instead, as alleged the comments took the form of a casual conversation about smoking and addiction. Plaintiff also alleges that he was reprimanded for this "off-duty speech regarding nicotine addiction." (Third Am. Compl. ¶ 66.) Again, the undersigned must take plaintiff's allegations as true at the pleading stage. See e.g., Corrie, 503 F.3d at 977. Accordingly, the undersigned finds that at this procedural posture, taking as true plaintiff's allegations that he spoke about smoking and addiction, defendants have not shown that the content of this alleged speech fails to touch on issues of public concern as a matter of law. Albeit not of the same alleged public concern, the same analysis is true with respect to plaintiff's "call me" hand sign and "rock in his pocket" statements (id. ¶¶ 57-59); because without analogous supporting authorities from defendants, the undersigned declines to find at this procedural posture that such off-duty comments of a private citizen are unprotected as a matter of law. Therefore, defendants' motion to dismiss is denied in this regard.

3.   *Plaintiff Has Not Plausibly Alleged That He Suffered Retaliation For Making Comments About Smoking And Addiction*

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677-79. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory

or by lacking sufficient facts alleged under a cognizable legal theory.  Balistreri, 901 F.2d at 699.

Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to

plausible," is the complaint properly dismissed.  Iqbal, 556 U.S. at 677-79.  While the plausibility

requirement is not akin to a probability requirement, it demands more than "a sheer possibility

that a defendant has acted unlawfully."  Id.; accord Twombly, 550 U.S. at 556.  This plausibility

inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  Id. at 679.  The pleading must state "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the misconduct alleged]."

Twombly, 550 U.S. at 556.

Here, defendants argue that plaintiff "admits" his supervisors acted in response to

complaints of sexual harassment by plaintiff such that plaintiff has not plausibly alleged that the

supervisors even knew about plaintiff's statements regarding smoking and addiction, let alone

retaliated against plaintiff for making such statements.  (Mot. to Dismiss at 12.)  Plaintiff alleges

that his supervisors drafted the Warning Letter after "substitut[ing] Plaintiff's speech regarding

cigarette smoking, and the theories of addiction, with" offensive sexual statements plaintiff

alleges he never made.  (Third Am. Compl. ¶ 64.)  However, somewhat confusingly, plaintiff

*also* repeatedly alleges that the Warning Letter was prompted by coworker complaints that he

made unwanted sexual advances toward coworker Kimberly Bell.  (Id. ¶¶ 48-51.)  Plaintiff

expressly alleges that he received the Warning Letter "after allegations of [his] sexually

inappropriate behavior" toward Kimberly Bell.  (Id. ¶ 91.)

Typically, whether the Warning Letter was motivated by coworker complaints

about offensive sexual statements versus a desire to quell speech about smoking would present a

factual issue suitable for a motion for summary judgment or trial.  However, under Iqbal, plaintiff

has the obligation to "plausibly" allege that his supervisors retaliated against him for speaking

about smoking and addiction, and plaintiff has not done so.  See Iqbal, 556 U.S. at 679-81.  The

TAC does not contain a single non-conclusory factual allegation indicating that the Warning

Letter was intended to quell protected speech about smoking or addiction.  See Huskey, 204 F.3d

at 899-90 (speech must be a "substantially motivating factor" in the alleged adverse employment

action) (citing cases).  Instead, the TAC alleges that plaintiff's supervisors warned plaintiff after

they received complaints that plaintiff made *offensive sexual statements* in the course of speaking

to his coworkers about smoking and Freud.  (E.g., Third Am. Compl.  ¶¶ 48-52 (all alleged

statements made during plaintiff's warning meeting dealt with the alleged *sexual* nature of

plaintiff's conduct toward Kimberly Bell); 91 (alleging the warning meeting and Warning Letter

arose "after allegations of sexually inappropriate behavior" by plaintiff toward Kimberly Bell).)

In other words, the complaint lacks factual, non-conclusory allegations to support a theory that

the Warning Letter was substantially motivated by speech about smoking and addiction.  Instead,

and as defendants argue (Mot. to Dismiss at 12), plaintiff's own allegations state that the

defendants issued the Warning Letter after employees reported alleged *sexual harassment* by

plaintiff.  (Third Am. Compl. ¶ 65.)

        The gravamen of plaintiff's pleading is that supervisors failed to determine what

plaintiff *actually* said to his co-workers and whether plaintiff's speech was *actually* sexual.  In

other words, plaintiff claims his due process rights were violated when his supervisors issued the

Warning Letter before confirming that plaintiff truly made the sexual statements his coworkers

reported.  (Id. ¶¶ 64-65.)  Plaintiff alleges that his supervisors "failed to investigate the truth of

the [co-worker] allegations" that plaintiff's words and conduct were offensively sexual.  (Id.)

But the TAC does not include any factual allegations plausibly indicating that plaintiff's

supervisors actually sought to chill non-sexual speech about smoking or addiction.  Plaintiff has

not alleged a single fact that would allow the court to reasonably infer that plaintiff's supervisors

issued the Warning Letter to plaintiff because of his alleged protected speech about smoking

*rather than* in response to alleged complaints about sexual harassment.  See Caviness, 590 F.3d

at 812; Huskey, 204 F.3d at 899.  Plaintiff has not alleged, for instance, that his supervisors had

*any* reason to attempt to curtail speech about nicotine addiction.  As currently pleaded, then,

plaintiff has not plausibly alleged that his speech about smoking was a "substantial motivating factor" in his receipt of the Warning Letter and/or a somewhat negative performance review.  See Huskey, 204 F.3d at 899. Plaintiff's First Amendment retaliation claim therefore lacks facial plausibility insofar as it is based upon plaintiff's alleged casual off-duty statements to coworkers. See Iqbal, 553 U.S. at 667-71.

Because a complaint must be supported by well-pleaded factual allegations to state a claim that is plausible on its face, plaintiff's free speech claim is dismissed insofar as it arises from plaintiff's alleged conversations with co-workers.  See Coto Settlement, 593 F.3d at 1034; Caviness, 590 F.3d at 812.  However, it is possible that plaintiff could amend his pleading to allege a factual basis for his apparent theory that the Warning Letter was issued in response to plaintiff's alleged speech about smoking *rather than* in response to receiving employee complaints about unwelcome sexual comments by plaintiff.  Accordingly, the undersigned will permit plaintiff one final opportunity to amend his pleading in efforts to plausibly allege the claim.

D.    The Third Amended Complaint Fails To State A Due Process Claim

As the undersigned previously informed plaintiff, plaintiff's "Fourteenth Amendment" claim should be asserted through Section 1983.  (See Order issued April 25, 2012, Dkt. No. 35 at 36-37 n.30) (citing Magana v. Northern Mariana Islands, 107 F.3d 1436, 1442-43 (9th Cir. 1997) (citing Monroe v. Pape, 365 U.S. 167 (1961), overruled on other grounds in Monell v. Department of Soc. Serv., 436 U.S. 658 (1978); Ngiraingas v. Sanchez, 495 U.S. 182, 187 (1990) ("Section 1983 was originally enacted as § 1 of the Civil Rights Act of 1871. The Act was enacted for the purpose of enforcing the provisions of the Fourteenth Amendment."))[7]

_____

[7] The Fourteenth Amendment does not create a direct cause of action.  Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995).  Instead, § 1983 provides a statutory cause of action for all citizens injured by an abridgment of the protections contained in the Constitution, including the

23

The due process clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty, and property" without due process of law. U.S. Const., amend. XIV. "[T]he touchstone of due process is protection of the individual against arbitrary action of government." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 948 (9th Cir. 2004). The due process clause confers both procedural and substantive rights — i.e., due process violations can refer either to a denial of fundamental procedural fairness (procedural due process violations) or the exercise of power without any reasonable justification in the service of a legitimate governmental objective (substantive due process violations). See Lewis, 523 U.S. at 845-46. "A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010); accord Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005).

Defendants argue that plaintiff has alleged "minor actions" — namely, placement of a Warning Letter in his personnel file and a somewhat negative performance evaluation — and that these do not give rise to a constitutional right to due process. (Motion at 7-8.) The argument is well-taken.

### 1. *No Recognized Liberty Interest Alleged*

Plaintiff has not sufficiently alleged the deprivation of a liberty interest because plaintiff has not alleged that his public employment was terminated, that he was discharged, or that he was suspended. See Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1179 (1998) ("In

Equal Protection and Due Process Clauses of the Fourteenth Amendment. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 119-20 (1992); Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 611 (2008) (reiterating that "§ 1983 provides a cause of action for all citizens injured by an abridgment of [the] protections" found in the "Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution").

the end, Mustafa was not terminated, but rather was transferred . . . . Moreover, harm to reputation alone is insufficient to implicate and individual's liberty interest") (citing cases); Paul v. Davis, 424 U.S. 693, 711-12 (1976) ("[A] protected liberty interest exists where an employee's reputation is impugned *in connection with termination*.") (emphasis added) (requiring the claimant to show harm to reputation *plus* some more tangible interest in order to qualify as a liberty interest)); In Re Selcraig, 705 F.2d 789, 795 (5th Cir. 1983) ("official publication of a stigmatizing charge . . . without discharge is not of itself constitutionally prohibited"); accord Evans v. Braddock, No. C06-5304 RBL, 2007 WL 858069, at *3-6 (W.D. Wash. March 16, 2007) (unpublished) ("Courts addressing the issue have uniformly held that publication of a stigmatizing charge without discharge is not constitutionally prohibited.") (citing cases).

Here, plaintiff alleges only harm to reputation and not the necessary additional component of termination, discharge, or suspension. See Mustafa, 157 F.3d at 1179; Paul, 424 U.S. at 711-12. Plaintiff has therefore not stated the first element of a due process claim — the deprivation of a constitutionally protected liberty interest. See Krainski, 616 F.3d at 970. Plaintiff has already amended his pleading several times and not alleged termination, discharge, or suspension; further, during a hearing counsel for defendants confirmed on the record that plaintiff remained employed. (Minutes dated January 12, 2012, Dkt. No. 29.) Plaintiff has already amended his pleading several times and has failed to allege termination or the like, despite instruction from the court on this issue. (Order issued April 25, 2012, Dkt. No. 35 at 36-39.) Accordingly, further opportunities to amend would be futile.

2.     *No Recognized Property Interest Alleged*

Plaintiff has also failed to allege the deprivation of a constitutionally protected property interest. See Krainski, 616 F.3d at 970. Although plaintiff's alleged interests in his status and income are property interests, see, e.g., Board of Regents v. Roth, 408 U.S. 564, 577 (1972), he has not alleged facts establishing a prima facie case of a lack of due process with respect to them.

Plaintiff alleges that he has an "expectation of a property interest in his state employment" given his status of "full-time permanent" state employee since 1994.[8]  (Third Am. Compl. ¶¶ 32-34.)  Plaintiff alleges that placement of the Warning Letter in his personnel file, and presumably the placement of the negative performance evaluation in his personnel file, have decreased the "value" of his property interest.  (Id. at ¶¶ 34-35.)

Plaintiff's theory is that the "value" of his continued employment was diminished when certain documents were added to his personnel file, but this theory does not adequately allege a "final" deprivation of plaintiff's status or income.  Gearhart v. Thorne, 768 F.2d 1072, 1073-74 (9th Cir. 1985) ("The touchstone of analysis in property deprivation cases is whether the plaintiff received adequate due process before he was *finally* deprived of his property.") (emphasis in original).  The court in Gearhart found that a plaintiff who had been temporarily demoted but was ultimately reinstated had failed to state a due process claim because the temporary demotion was not a "final deprivation of his interests."  Id. (granting judgment on the pleadings).  Unlike the plaintiff in Gearhart, plaintiff here does not allege even a *temporary* demotion or pay cut; he alleges instead that the abstract "value" of his job was diminished when documents were added to his personnel file.  See id.  If allegations of a temporary demotion and pay cut were not sufficient to state a final deprivation of a property interest in Gearhart, a decrease in the abstract "value" of plaintiff's job — without a demotion or pay cut — is likewise insufficient to allege a final deprivation.  See id.  There is no constitutionally protected property interest in plaintiff's performance evaluations.  See id. (citing cases).

Further, plaintiff has not alleged any nexus between the documents in his personnel file and any other property interests.  See id.  A footnote in plaintiff's pleading states that since the Warning Letter was placed in plaintiff's file, plaintiff "has not been successful in

[8]  Plaintiff's allegation of "full-time permanent" employment is not necessarily tantamount to an allegation that plaintiff could only be terminated with cause, or that plaintiff had more rights than an at-will employee.  However, at this procedural posture, the undersigned will assume that plaintiff intended to allege that he could not be terminated without cause.

securing other employment." (Third Am. Compl. ¶ 35 n.6.) However, plaintiff has not alleged that he actually applied for other employment, has not alleged that his potential employer was aware of the contents of his personnel file, and has not alleged that he was denied other employment due to the contents of his personnel file. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it . . . ." Braswell v. Shoreline Fire Dept., 622 F.3d 1099, 1102-03 (9th Cir. 2010) (quoting Roth, 408 U.S. at 577; citing Brady v. Gebbie, 859 F.2d 1543, 1547-48 (9th Cir. 1988)). State law creates a "legitimate claim of entitlement" giving rise to a protected property interest if it "impose[s] 'significant limitation[s] on the discretion of the decision maker.'" Nunez v. City of Los Angeles, 147 F.3d 867, 873 n.8 (9th Cir. 1998) (second alteration in original) (quoting Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir. 1984)). Indeed, "[u]ntil someone actually receives a promotion, or at least a binding assurance of a forthcoming promotion, he cannot claim a property interest in the promotion." Nunez, 147 F.3d at 873. Even if plaintiff were able to amend his pleading to allege that a potential employer actually *viewed* the alleged contents of his personnel file, plaintiff has not indicated in his Opposition brief that he could allege that he ever had more than a "unilateral expectation" in any given open position for which he was not ultimately hired. See Braswell, 622 F.3d at 1102-03.

Accordingly, as in Gearhart, plaintiff has not stated a due process claim based on negative evaluations or documents in his personnel file because he has not alleged a final deprivation of a property interest. See Gearhart, 768 F.2d at 1073-74. Plaintiff has therefore not stated the first element of a due process claim – the deprivation of a constitutionally protected property interest. See Krainski, 616 F.3d at 970. Plaintiff has already amended his pleading several times and has failed to allege as much, despite instruction from the court on this issue. (Order issued April 25, 2012, Dkt. No. 35 at 36-39.) Nothing in plaintiff's Opposition indicates that plaintiff could remedy this defect with another opportunity to amend his pleading.

27

1  Therefore, further opportunities to amend would be futile.  Plaintiff's third claim for "violation of

2  the Fourteenth Amendment due process" (Third Am. Compl. at 18) is dismissed with prejudice.

3          E.      The Third Amended Complaint Fails To State A Claim For "Conspiracy"
                    In Violation Of 42 U.S.C. § 1983
4

5          As the undersigned's prior order informed plaintiff (Order issued April 25, 2012,

6  Dkt. No. 35 at 33), to state a viable claim of "conspiracy" to violate a plaintiff's constitutional

7  rights under 42 U.S.C. § 1983, "the plaintiff must state specific facts to support the existence of

8  the claimed conspiracy." Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989) (citation

9  omitted) (noting that plaintiff's pleading contained only "conclusory allegations.")  "To establish

10  liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an

11  agreement or meeting of the minds' to violate constitutional rights.  [Citation.]  'Such an

12  agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as

13  the actions of the defendants.'"  Crowe v. Cnty. of San Diego, 608 F. 3d 406, 440 (9th Cir. 2010)

14  (internal citations omitted).  Conclusory allegations of a conspiracy do not satisfactorily allege a

15  section 1983 claim.  E.g., Simmons v. Sacramento Cnty Superior Court, 318 F.3d 1156, 1161

16  (9th Cir. 2003) (affirming dismissal of plaintiff's second amended complaint as a result of

17  plaintiff's "conclusory allegations" of a conspiracy to deprive him of his constitutional rights in

18  violation of Section 1983).

19          Plaintiff's "conspiracy" claim is again supported only by conclusory allegations,

20  such as "Defendants John Jang and John Swift became of one mind . . ." and defendants "met,

21  conferred with each other and formulated one mind for a common purpose of retaliating against

22  the [p]laintiff . . . ."  (Third Am. Compl. ¶¶ 93-95.)  In terms of *factual* allegations, plaintiff

23  alleges only that a Warning Letter was placed in plaintiff's file, that he had a meeting with two

24  supervisors, that he received a somewhat negative performance review, and the like, but plaintiff

25  does not allege factual allegations that would plausibly support the existence of an actual

26  conspiracy to violate his constitutional rights.  The undersigned previously instructed plaintiff

regarding alleging a "conspiracy" claim in connection with his Section 1983 claim. (Order issued April 25, 2012, Dkt. No. 35 at 33-35.) Yet, plaintiff's current pleading again fails to include the requisite non-conclusory *facts* plausibly supporting a "meeting of the minds" to violate his constitutional rights, let alone facts supporting the involvement of "each participant" in the alleged conspiracy. Accordingly, because plaintiff was previously instructed regarding the need for more factual allegations plausibly supporting his "conspiracy" claim and has not shown an ability to cure the defect. Nothing in plaintiff's Opposition indicates that plaintiff could remedy this defect with another opportunity to amend his pleading. Accordingly, further opportunities to amend would be futile. The "conspiracy" claim is dismissed with prejudice.[9]

### F. State Law Claim For Breach Of Fiduciary Duty

Plaintiff's fourth claim for relief is for breach of fiduciary duty by his supervisors. (Third Am. Compl. ¶¶ 99-101.) However, as defendants correctly argue (Mot. to Dismiss at 14), employment-type relationships are not fiduciary relationships under California law. O'Byrne v. Santa Monica-UCLA Med. Ctr., 94 Cal. App. 4th 797, 811 (2001); Amid v. Hawthorne Cmty. Med. Grp., Inc., 212 Cal. App. 3d 1383, 1391 (1989).) "A bare employee-employer relationship does not create a confidential relationship." Amid, 212 Cal. App. 3d at 1391 (upholding dismissal of fiduciary duty claim at the pleading stage). "In the absence of a fiduciary relationship, there can be no breach of fiduciary duty as a matter of law." O'Byrne, 94 Cal. App. 4th at 811 (upholding grant of summary judgment for defendant as to plaintiff's fiduciary duty claim). Moreover, in his opposition plaintiff failed to meaningfully respond to defendant's challenge to his fiduciary duty claim. (Opp'n at 10-14; Mot. to Dismiss at 14.) Plaintiff has not

---

[9] Defendants argue in the alternative that plaintiff's conspiracy claim is barred by the doctrine of qualified immunity. (E.g., Reply at 6.) Because the undersigned dismisses the conspiracy claim as described herein, however, the undersigned will not determine whether the doctrine of qualified immunity applies as to that claim. Defendants did not clearly argue that "qualified immunity" barred plaintiff's other claims, and appeared to limit that argument to the conspiracy claim. (Mot. to Dismiss at 13 ("Qualified Immunity compels dismissal of the conspiracy claim").)

1  indicated that he could remedy this deficient claim if given leave to amend it.  Accordingly,

2  plaintiff's fiduciary duty claim is dismissed with prejudice.

3  IV.    <u>CONCLUSION</u>

4            For the reasons stated above, IT IS HEREBY ORDERED that:

5            1.    Defendants' motion to dismiss (Dkt. No. 43) is granted in part and denied

6  in part.

7            2.    Plaintiff's second claim for "42 U.S.C. § 1983 (Conspiracy)" is dismissed

8  with prejudice.

9            3.    Plaintiff's third claim for "Violation of the Fourteenth Amendment Due

10  Process" is dismissed with prejudice.

11            4.    Plaintiff's fourth claim for "Breach of a Fiduciary Duty" is dismissed with

12  prejudice.

13            5.    Plaintiff's first claim for "Violation of Right to Free Speech," also known

14  as his claim for First Amendment retaliation, is dismissed with prejudice insofar as it is premised

15  upon plaintiff's alleged email.  The claim is dismissed without prejudice insofar as it is premised

16  upon plaintiff's alleged conversations with coworkers.  If he can do so in good faith, plaintiff

17  shall file an amended pleading plausibly alleging that his off-duty statements about smoking were

18  a substantially motivating factor in his receipt of the Warning Letter or other alleged adverse

19  employment action(s).  If he can make them in good faith, plaintiff's amendment shall include

20  non-conclusory factual allegations supporting his apparent theory that the Warning Letter was

21  issued in response to protected speech about smoking/addiction rather than in response to

22  complaints about sexual harassment.

23            a.    Within 30 days of the date of entry of this order, plaintiff shall file an

24  amended complaint that is complete in itself.  The amended pleading shall not include claims

25  that have been dismissed with prejudice herein. The amended complaint must bear the docket

26  number assigned to this case and must be entitled "Fourth Amended Complaint."  Plaintiff must

file an original and one copy of the Fourth Amended Complaint. Failure to timely file a Fourth

Amended Complaint in accordance with this order may result in a recommendation that this

action be dismissed. Additionally, plaintiff is informed that the court cannot refer to prior

pleadings in order to make an amended complaint complete. Eastern District Local Rule 220

requires that an amended complaint be complete in itself. This requirement is because, as a

general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375

F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being

treated thereafter as non-existent."). Accordingly, once plaintiff files an amended complaint,

previously-filed versions of the complaint no longer serve any function in the case.

      b.     If plaintiff fails to amend his pleading as ordered, plaintiff may be subject

to sanctions, and such sanctions may include the dismissal of plaintiff's case. Eastern District

Local Rule 183, governing persons appearing without counsel, provides that failure to comply

with the Federal Rules of Civil Procedure and Local Rules may be ground for dismissal,

judgment by default, or other appropriate sanction. Local Rule 110 provides that failure to

comply with the Local Rules "may be grounds for imposition by the Court of any and all

sanctions authorized by statute or Rule or within the inherent power of the Court." See also

Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995). Pro se litigants are bound by the rules of

procedure, even though pleadings are liberally construed in their favor. King v. Atiyeh, 814 F.2d

565, 567 (9th Cir. 1987).

      IT IS SO ORDERED.

DATED: October 17, 2012

                                              _____

      KENDALL J. NEWMAN
      UNITED STATES MAGISTRATE JUDGE