1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN L. HARRIS III,

11               Plaintiff,                    No. 2:11-cv-2186 KJN
             v.

12
     KAMALA HARRIS, Attorney General of
13   the State of California, as in her official
     capacity, et al.,

14
                 Defendants.                   ORDER
15   _____/

16            Currently pending before the undersigned is defendants' Motion to Dismiss the

17   Fourth Amended Complaint.[1]  (Mot. to Dismiss, Dkt. No. 50.)  Plaintiff John L. Harris III

18   ("plaintiff"), proceeding without counsel in this action, timely filed an opposition brief

19   ("Opposition").[2]  (Opp'n, Dkt. No. 52.)  Defendants filed reply briefing in support of their

20   motion ("Reply").  (Reply, Dkt. No. 54.)

21   ////

22

23        [1]  Plaintiff's Fourth Amended Complaint names Kamala Harris, Attorney General of the State
     of California in her Official Capacity, and Don Hayashida, John Jang, and John Swift, each in their
     individual and official capacities.  (Fourth Am. Compl., Dkt. No. 49 at 1.)

24

25        [2]  Originally, this action was referred to the undersigned pursuant to Eastern District Local
     Rule 302(c)(21).  (Dkt. No. 4.)  This action has since been referred to the undersigned for all
     purposes, including trial, pursuant to the consent of all appearing parties and an order dated May 25,

26   2012.  (Dkt. No. 38.)  See 28 U.S.C. § 636(c); Local Rule 301.

                                               1

The undersigned took this matter under submission on the briefs and without oral argument.  (Dkt. No. 53.)  The undersigned has considered the briefs and the appropriate portions of the record in this case and, for the reasons stated below, grants defendants' motion to dismiss.  The undersigned dismisses plaintiff's fourth amended pleading, and such dismissal is with prejudice.  Plaintiff's pleading fails to plausibly allege a First Amendment retaliation claim, and given that plaintiff has had multiple opportunities to properly allege such a claim, further opportunities to amend would be futile.

I.      BACKGROUND

        A.      Procedural History

        Plaintiff filed his original complaint on August 17, 2011.  (Dkt. No. 1.)  Thereafter, plaintiff filed various iterations of his pleading.  (Dkt. Nos. 5 (First Am. Compl.); 7 (Second Am. Compl.); 12 (a different "Second" Am. Compl.).)

        Defendants previously moved to dismiss plaintiff's Second Amended Complaint.  (Second Am. Compl., Dkt. No. 12.)  On April 25, 2012, the undersigned granted defendants' motion (Dkt. No. 21) pursuant to Federal Rule of Civil Procedure 8(a) and gave plaintiff leave to amend his pleading.  (Order issued April 25, 2012, Dkt. No. 35.)  That order informed the plaintiff that his amended pleading should clearly link specific defendants with specific allegations and claims for relief, include only non-conclusory allegations that are relevant to his claims, and include facts sufficient to support each element of his claims.  (Id. at 44-47.)

        Plaintiff timely filed a Third Amended Complaint.  (Third Am. Compl., Dkt. No. 40.)  On June 22, 2012, defendants moved to dismiss plaintiff's Third Amended Complaint.  (Dkt. No. 43.)  In partially granting defendants' motion, the undersigned dismissed all of plaintiff's claims with prejudice, with the exception of plaintiff's First Amendment retaliation claim, which was dismissed with leave to amend.  (Order issued Oct. 18, 2012, Dkt. No. 48.)

        Plaintiff timely filed a Fourth Amended Complaint ("FAC").  (Fourth Am. Compl., Dkt. No. 49.)  On December 4, 2012, defendants moved to dismiss that pleading.  (Mot.

1   to Dismiss, Dkt. No. 50.)

2                 B.       Allegations In The Fourth Amended Complaint

3            The undersigned has previously spent a significant amount of time attempting to

4   distill factual allegations and claims from plaintiff's muddled pleadings (See Order dated April

5   25, 2012, Dkt. No. 35 at 3-11), and given the meandering style of plaintiff's most recent

6   pleading, declines to engage in that time-consuming process yet again.[3]  Suffice it to say that the

7   undersigned has carefully reviewed plaintiff's Fourth Amended Complaint ("FAC") and has

8   determined that the pleading does not materially differ from plaintiff's previous pleading with

9   respect to the factual allegations underlying the claim for First Amendment retaliation.

10           In a nutshell, as with his prior pleadings, plaintiff again alleges that his

11  supervisors placed a "Memorandum of Instruction" (hereinafter the "Warning Letter") in his

12  personnel file after they received complaints that plaintiff made inappropriate sexual statements

13  to a coworker on several occasions, including during an "off-duty street corner conversation"

14  about smoking and "nicotine addiction."  (Fourth Am. Compl. at 1, 5-7, 12-13.)  Plaintiff alleges

15  that the Warning Letter — as well as a meeting held to discuss it and a performance appraisal

16  mentioning it — amount to retaliation for his statements about smoking and nicotine addiction.

17  (Id. at 6-10.)  Plaintiff also alleges that these events followed coworker reports to management

18  that plaintiff made a "call me" hand sign to a female coworker and made a comment about the

19  lack of a "rock in his pocket" to that same female coworker.  (Id. at 7-8.)

20  ////

21  ////

22

23      [3]  See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (affirming district court's
    dismissal of the complaint for violation of Rule 8 and failure to comply with court orders, because
24  with "prolix" pleadings, "[t]he judge wastes half a day in chambers preparing the 'short and plain
    statement' which Rule 8 obligated plaintiffs to submit.  He then must manage the litigation without
25  knowing what claims are made against whom.  This leads to discovery disputes and lengthy trials,
    prejudicing litigants in other case who follow the rules, as well as defendants in the case in which
26  the prolix pleading is filed.")

1   II.     LEGAL STANDARDS

2          A.      Federal Rule of Civil Procedure 8

3          Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a

4   complaint must provide, in part, a "short and plain statement" of claims showing entitlement to

5   relief.  Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, 556 U.S. 662, 677-81(2009); Paulsen v. CNF,

6   Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053 (2010).  The complaint

7   must "give the defendant fair notice of what the claim is and the grounds upon which it rests."

8   Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  In order to

9   survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic

10  recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

11  raise a right to relief above the speculative level."  Id.  While Rule 8(a) does not require detailed

12  factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me

13  accusation."  Iqbal, 556 U.S. at 678-79.  Similarly, Rule 8(d) requires a pleading to be "concise

14  and direct," and made up of "simple, concise and direct" allegations.  Fed. R. Civ. P. 8(d).

15         B.      Federal Rule of Civil Procedure 12(b)(6)

16         A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

17  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

18  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Federal pleading standards require the

19  presentation of factual allegations sufficient to state a plausible claim for relief as to each

20  defendant.  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998) ("[a] plaintiff must allege

21  facts, not simply conclusions, that show that an individual was personally involved in the

22  deprivation of civil rights").  A pleading is insufficient if it offers mere "labels and conclusions"

23  or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555;

24  Iqbal, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by

25  mere conclusory statements, do not suffice.").  The mere possibility of misconduct falls short of

26  meeting this plausibility standard.  Twombly, 550 U.S. at 545.  However, "[s]pecific facts are not

4

1   necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim

2   is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (quoting

3   <u>Twombly</u>, 550 U.S. at 555) (citations and internal quotations omitted).

4          A complaint should be dismissed for failure to state a claim if, taking all

5   well-pleaded factual allegations as true, it does not contain "'enough facts to state a claim to

6   relief that is plausible on its face.'" <u>See Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1034 (9th

7   Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 678-79.) "'A claim has facial plausibility when the

8   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9   defendant is liable for the misconduct alleged.'" <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>,

10  590 F.3d 806, 812 (9th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 678-79). The court accepts all of

11  the facts alleged in the complaint as true and construes them in the light most favorable to the

12  plaintiff. <u>Corrie v. Caterpillar</u>, 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however,

13  required to accept as true conclusory allegations that are contradicted by documents referred to in

14  the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely

15  because they are cast in the form of factual allegations." <u>Paulsen</u>, 559 F.3d at 1071 (citations and

16  quotation marks omitted).

17         In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

18  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

19  and matters properly subject to judicial notice." <u>Outdoor Media Grp., Inc. v. City of Beaumont</u>,

20  506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court

21  may not consider a memorandum in opposition to a defendant's motion to dismiss to determine

22  the propriety of a Rule 12(b)(6) motion, <u>see Schneider v. Cal. Dep't of Corr.</u>, 151 F.3d 1194,

23  1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

24  whether to grant leave to amend, <u>see, e.g.</u>, <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir.

25  2003) (citing <u>Orion Tire Corp. v. Goodyear Tire & Rubber Co.</u>, 268 F.3d 1133, 1137-38 (9th Cir.

26  2001)).

1    The court must construe a pro se pleading liberally to determine if it states a claim

2  and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and provide an opportunity

3  to cure those deficiencies if it appears at all possible that the plaintiff can do so.  See Lopez v.

4  Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

5  Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

6  particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

7  n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

8  evaluating them under Iqbal).

9  III.    DISCUSSION

10          A.    First Amendment Retaliation

11          Plaintiff seeks to base his First Amendment retaliation claim upon off-duty

12  statements he allegedly made to coworkers regarding smoking/addiction, and the undersigned

13  addresses this contention below.  However, in an abundance of caution, the undersigned also

14  analyzes plaintiff's First Amendment retaliation claim in the context of the alleged "call me"

15  hand sign and "rock in pocket" comment.  It is not clear from the pleading whether plaintiff takes

16  ownership of the "call me" hand sign or the "rock in pocket" comment that Kimberly Bell

17  allegedly attributed to him and reported to management (e.g., Fourth Am. Compl. at 7-8), or

18  whether plaintiff also intends to premise his First Amendment retaliation claim upon those

19  comments.  As stated, however, in an abundance of caution the undersigned proceeds as if that is

20  the case.  In any event, the claim does not properly arise from any of these alleged forms of

21  speech as discussed below.

22          Under the same legal analyses described in the undersigned's Order of October

23  18, 2012 (Order, Dkt. No 48 at 11-23), which is incorporated by reference herein, plaintiff has

24  not plausibly alleged a claim for First Amendment retaliation in connection with his statements

25  about smoking and addiction.  Further, plaintiff has not alleged such a claim in connection with

26  having made a "call me" hand sign or "rock in pocket" comment, because in the context of this

1   particular case, neither amounts to speech that touches on a matter of public concern.

2          As described in the undersigned's prior orders (Orders, Dkt. Nos. 35, 48), the

3   Ninth Circuit Court of Appeals uses "a sequential five-step series of questions" in evaluating the

4   speech component of a First Amendment retaliation claim.  Gibson v. Office of Atty. Gen., State

5   of Cal., 561 F.3d 920, 925 (9th Cir. 2009) (citing Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir.

6   2009).)  Those questions are as follows: "(1) whether the plaintiff spoke on a matter of public

7   concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the

8   plaintiff's protected speech was a substantial or motivating factor in the adverse employment

9   action; (4) whether the state had an adequate justification for treating the employee differently

10  from other members of the general public; and (5) whether the state would have taken the

11  adverse employment action even absent the protected speech."  Id.; accord Karl v. City of

12  Mountlake Terrace, 678 F.3d 1062, 1068-69 (9th Cir. 2012).  Because these are sequential steps,

13  a plaintiff's failure to satisfy any one of the steps ends the inquiry.  Johnson v. Poway Unified

14  Sch. Dist., 658 F.3d 954, 961-62 (9th Cir. 2011).

15          1.     *Plaintiff Has Not Plausibly Alleged That He Suffered Retaliation For*
                   *Making Comments About Smoking And Addiction*
16

17          As explained in the undersigned's previous Order (Dkt. No. 48 at 20-23),

18  "plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader

19  will succeed in proving the allegations.  See Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at

20  555.  Instead, it refers to whether the non-conclusory factual allegations, when assumed to be

21  true, "allow[] the court to draw the reasonable inference that the defendant is liable for the

22  misconduct alleged."  Iqbal, 556 U.S. at 677-79.  "The plausibility standard is not akin to a

23  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

24  unlawfully."  Id. (quoting Twombly, 550 U.S. at 557).  A complaint may fail to show a right to

25  relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a

26  cognizable legal theory.  Balistreri, 901 F.2d at 699.  Only where a plaintiff has failed to "nudge

7

1   [his or her] claims across the line from conceivable to plausible," is the complaint properly

2   dismissed.  Iqbal, 556 U.S. at 677-79.  This plausibility inquiry is "a context-specific task that

3   requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

4   The pleading must state "enough fact[s] to raise a reasonable expectation that discovery will

5   reveal evidence of [the misconduct alleged]."  Twombly, 550 U.S. at 556.

6            Here, as defendants compellingly argue, the terms of plaintiff's own pleading

7   reveal that plaintiff's supervisors acted in response to complaints by other employees alleging

8   sexual harassment by plaintiff, not out of a desire to quell comments about smoking or addiction.

9   Under Iqbal, plaintiff has the obligation to "plausibly" allege that his supervisors retaliated

10  against him for speaking about smoking and addiction, and plaintiff has not done so.  See Iqbal,

11  556 U.S. at 679-81.  Plaintiff has not plausibly alleged that the supervisors knew about plaintiff's

12  statements regarding smoking and addiction, let alone that they retaliated against plaintiff for

13  making such statements.  (Mot. to Dismiss at 3-7.)  Instead, the allegations in the pleading reveal

14  that the Warning Letter (and supervisors' alleged conduct in connection therewith) was a

15  response to plaintiff's coworkers raising their concerns that plaintiff was sexually harassing a

16  coworker.  (E.g., Fourth Am. Compl. at 7-8 (explaining that supervisors questioned plaintiff after

17  his coworker reported concerns about plaintiff's "call me" hand sign, "rock in pocket" comment,

18  and plaintiff's statements about "oral fixation" etc.).)  The FAC does not contain a single non-

19  conclusory factual allegation indicating that the Warning Letter was intended to quell protected

20  speech about smoking or addiction.  See Huskey v. City of San Jose, 204 F.3d 893, 899-900 (9th

21  Cir. 2000) (speech must be a "substantially motivating factor" in the alleged adverse action).

22  Instead, the FAC alleges that plaintiff's supervisors warned plaintiff after they received

23  complaints that plaintiff made offensive sexual statements in the course of speaking to his

24  coworkers about smoking and Freud.  (E.g., Fourth Am. Compl. at 7-8 (alleged statements made

25  during plaintiff's meeting with supervisors dealt with the alleged *sexual* nature of plaintiff's

26  conduct toward coworker Kimberly Bell); 11 ("defendant John Swift verbally harassed the

8

1   plaintiff *after being contacted by his cohorts* regarding the plaintiff's protected speech.")

2   (emphasis added).)  There are simply *no* factual allegations that raise any inference that

3   plaintiff's supervisors were at any relevant time seeking to silence plaintiff's views on smoking,

4   tobacco or addiction.

5           Plaintiff has not alleged a single fact that would allow the court to reasonably

6   infer that plaintiff's supervisors issued the Warning Letter for any reason other than in response

7   to coworker concerns about sexual harassment by plaintiff.  See Caviness, 590 F.3d at 812;

8   Huskey, 204 F.3d at 899.  Plaintiff has not alleged that his supervisors had *any* reason to attempt

9   to curtail speech about nicotine addiction.  As currently pleaded, then, plaintiff has not plausibly

10  alleged that his speech about smoking was a "substantial motivating factor" in his receipt of the

11  Warning Letter and/or a somewhat negative performance review.  See Huskey, 204 F.3d at 899.

12  Accordingly, insofar as it is premised upon plaintiff's alleged statements about smoking and

13  addiction, the First Amendment retaliation claim lacks the requisite facial plausibility to survive

14  the pleading stage.  See Iqbal, 553 U.S. at 667-71.

15          2.      *In The Particular Context Alleged In This Case, Plaintiff's Alleged "Call*
                    *Me" Hand Sign And "Rock In Pocket" Comment Do Not Touch On*
16                  *Matters Of Public Concern*

17          As explained in the undersigned's prior Order (see generally Order, Dkt. No. 48 at

18  8-15), the "public concern inquiry is purely a question of law."  Gibson, 561 F.3d at 925;

19  Desrochers v. City of San Bernardino, 572 F.3d 703, 709 (9th Cir. 2009) (quoting Eng, 552 F.3d

20  at 1070 and citing Connick v. Meyers, 461 U.S. 138, 147 (1983)).  Determining whether the

21  speech at issue touched on a matter of public concern is properly decided on a motion to dismiss.

22  E.g., Gibson, 561 F.3d at 925 (affirming district court's dismissal of First Amendment retaliation

23  claim under Federal Rule 12(b)(6) on grounds speech did not address a public concern).

24  Accordingly, accepting a plaintiff's speech as he has alleged it, the court can proceed to

25  determine whether such speech amounted to a "public concern" as a matter of law.

26  ////

1    The Ninth Circuit Court of Appeals generally affords a liberal construction to the

2    term "public concern." Roe v. City and Cnty of San Francisco, 109 F.3d 578, 586 (9th Cir.

3    1997).  Speech involves a matter of public concern when it can fairly be considered to relate to

4    "any matter of political, social, or other concern to the community." Eng, 552 F.3d at 1070

5    (quoting Johnson v. Multnomah Cnty., Or., 48 F.3d 420, 422 (9th Cir. 1995)).  "[T]he state may

6    not abuse its position as employer to stifle 'the First Amendment rights [its employees] would

7    otherwise enjoy as citizens to comment on matters of public interest.'" Id. (quoting Pickering v.

8    Bd. of Educ., 391 U.S. 563, 568 (1968)).

9    However, there "are limits" to the liberal construction of "public concern."

10   Desrochers, 572 F.3d at 710.  The State "has interests as an employer in regulating the speech of

11   its employees that differ significantly from those it possesses in connection with regulation of the

12   speech of the citizenry in general." Gibson, 561 F.3d at 926 (citing Pickering, 391 U.S. at 568).

13   "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as

14   an employee upon matters only of personal interest, absent the most unusual circumstances, a

15   federal court is not the appropriate forum in which to review the wisdom of a personnel decision

16   taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at

17   147-48.  "When employee expression cannot be fairly considered as relating to any matter of

18   political, social, or other concern to the community, government officials should enjoy wide

19   latitude in managing their offices, without intrusive oversight by the judiciary in the name of the

20   First Amendment." Gibson, 561 F.3d at 925 (citing Connick, 461 U.S. at 146).  Speech by

21   public employees "may be characterized as not of 'public concern' when it is clear that . . . the

22   information would be of no relevance to the public's evaluation of the performance of

23   governmental agencies." Id. (citing McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.

24   1983)).

25   Courts look first to the "content" of speech to determine whether it addresses a

26   matter of public concern. Johnson, 658 F.3d at 965; Desrochers, 572 F.3d at 710.  In Desrochers,

10

1   the Court of Appeals clarified that the content of protected speech "must involve 'issues about

2   which information is needed or appropriate to enable the members of society to make informed

3   decisions about the operation of their government.'" Desrochers, 572 F.3d at 710 (quoting

4   McKinley, 705 F.2d at 1114).  The court held that an individual's personnel dispute that "would

5   be of 'no relevance to the public's evaluation of the performance of governmental agencies' is

6   generally not of 'public concern.'" Id. (quoting Coszalter v. City of Salem, 320 F.3d 968, 973

7   (9th Cir. 2003).  The focus of the public concern analysis "must be upon whether the public or

8   community is likely to be *truly interested* in the particular expression . . . ." Desrochers, 572

9   F.3d at 713 (holding that the public would not be "truly interested" in whether police officers

10  thought their supervisor was a "micromanager," among other things) (quoting Roe, 109 F.3d at

11  585 (emphasis in Desrochers).  In Desrochers, the Court of Appeals affirmed the grant of

12  summary judgment in favor of defendants with respect to the First Amendment retaliation claim,

13  concluding that the speech in question "relate[d] at best only tangentially to matters of public

14  concern." Id. at 714.

15          Here, plaintiff's alleged "call me" hand sign and alleged "rock in pocket"

16  comment did not involve a "political, social, or other concern to the community," see Eng, 552

17  F.3d at 1070.  Further, the public is not likely to be *"truly interested in"* either the hand sign or

18  the "rock in pocket" comment. Desrochers, 572 F.3d at 710.  Further, such speech is of "no

19  relevance to the public's evaluation of the performance of governmental agencies." Id.  Neither

20  form of alleged speech is "needed or appropriate to enable the members of society to make

21  informed decisions about the operation of their government." See McKinley, 705 F.2d at 1114.

22  Nothing in either alleged form of speech "would be of even modest relevance to the public in

23  evaluating the functioning of" the California Department of Justice. See Brownfield v. City of

24  Yakima, 612 F.3d 1140, 1147-48 (9th Cir. 2010).  Finally, discussed in the undersigned's prior

25  order with respect to "form" and "context," both examples of speech targeted a limited audience

26  and not the broader public, weighing against a finding of protected speech. (Order, Dkt. No. 48

11

at 17 (citing authorities, including <u>Desrochers</u>, 572 F.3d at 714).)  As a matter of law, and in the

limited context of this particular case, the alleged "call me" hand sign and "rock in pocket"

speech do not touch upon matters of public concern.

Accordingly, for all the foregoing reasons, plaintiff's first amendment retaliation

claim is dismissed.  <u>See Coto Settlement</u>, 593 F.3d at 1034; <u>Caviness</u>, 590 F.3d at 812.  The

claim is not plausibly alleged to arise from plaintiff's statements about smoking or addiction, and

the claim does not properly arise from plaintiff's alleged "call me" hand sign or "rock in pocket"

comment because, in the limited context of this case, neither the hand sign nor the comment

touches on a matter of public concern.  Further, given that plaintiff has had several opportunities

to properly allege his First Amendment retaliation claim and has not been able to do so, further

opportunities to amend would be futile and the claim is dismissed with prejudice.  <u>See Lacey v.</u>

<u>Maricopa Cnty.</u>, 693 F.3d 896, 926 (9th Cir. 2012) ("[A] district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts.") (quoting <u>Doe v. U.S.</u>, 58 F.3d 494,

497 (9th Cir. 1995)).

B.    The Warning Letter

The undersigned notes that for the first time in this case, defendants have cited

authorities to support the argument that the Warning Letter is not an "adverse action" that can

properly form the basis of a First Amendment retaliation claim.[4]  (Mot. to Dismiss at 9-11.)  The

undersigned also notes that, for the first time in this case, defendants have filed what they

---

[4]  The undersigned's prior order explained that, in order to sustain a Section 1983 claim of
retaliation in violation of the First Amendment under 42 U.S.C. § 1983, plaintiff must allege that he
suffered an adverse employment action.  (Order, Dkt. No. 48 at 8-9 (citing <u>Huskey</u>, 204 F.3d at 899-
900).)  However, the prior Order also noted that defendants had not advanced any arguments
regarding whether plaintiff had sufficiently alleged the requisite "adverse action," so the undersigned
declined to reach that issue.  (<u>Id.</u> ("Because defendants have not compellingly argued otherwise,
however, the undersigned assumes that plaintiff has sufficiently alleged having suffered an 'adverse
employment action' given his allegation of receiving the Warning Letter.").)

describe as a copy of the Warning Letter and urge that it be incorporated by reference into plaintiff's pleading.  (Id. at 7-8 (attaching alleged Warning Letter as Exh. 1).)  Plaintiff vehemently opposes the suggested incorporation by reference and challenges the authenticity of the document.  (Opp'n at 1-2, 7-9, 18-20.)  Given that the undersigned dismisses this case with prejudice for other reasons stated above, however, the undersigned declines to reach defendants' "adverse action" argument, and declines to incorporate the Warning Letter by reference into plaintiff's pleading.  The undersigned further clarifies that he did not consider the proffered Warning Letter's contents in ruling upon the Motion to Dismiss.

IV.     CONCLUSION

          For the reasons stated above, IT IS HEREBY ORDERED that:

          1.      Defendants' Motion to Dismiss (Dkt. No. 50) is granted.

          2.      Plaintiff's claim for First Amendment retaliation is dismissed with prejudice.  In light of the two prior orders partially granting defendants' previous motions to dismiss (Dkt. Nos. 35, 48), this claim was the only remaining claim in this case.

          3.      The Clerk of the Court is hereby directed to close this case and vacate all future dates.

          IT IS SO ORDERED.

DATED:  January 17, 2013



                                        _____
                                        KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE

13